943 P.2d 836

**PHOENIX ELEMENTARY SCHOOL DISTRICT NO. 1, Plaintiff/Appellee,**

v.

**Candace L. GREEN; William R. Green; Dustin Green; Michael Bowling; Annette M. Ortiz; Analicia M. Ortiz, Defendants/Appellants.**

**No. 2 CA–CV 96–0279.**

Court of Appeals of Arizona,
Division 2, Department B.

March 27, 1997.

Review Denied Sept. 16, 1997.

Lewis & Roca LLP by Susan M. Freeman, Mary Ellen Simonson and Richard A. Halloran, Phoenix, for Plaintiff/Appellee.

Vernon E. Peltz, Tucson, for Defendants/Appellants.

Thomas W. Pickrell, Phoenix, for Amicus Curiae Arizona School Boards Association, Inc.

## OPINION

FLÓREZ, Judge.

Appellants, two students (Students) and their parents (Parents), appeal from a permanent injunction enjoining them from entering Phoenix Preparatory Academy (the Academy), a public inner-city middle school governed by appellee Phoenix Elementary School District No. 1 (the School District). The trial court issued the injunction after finding that the Academy's mandatory dress code does not violate the First Amendment to the United States Constitution. For the reasons set forth below, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In May 1995, the School District enacted a mandatory dress code for students attending the Academy.[1] The code stated:

> Boys: All white shirts with collar. No logos on the shirt. This may be a "Polo" shirt, dress shirt, etc. Navy blue pants or shorts.
>
> Girls: All white collared blouses or "polo" shirt. No logos on the blouse or shirt. Navy blue pants, shorts, or skirt.
>
> The white tops with a collar (polo shirt, oxford type shirt, blouse) may be purchased at any store. The only requirement is that they be all white with no logos of any kind.
>
> The navy blue bottoms (pants, shorts, skirt) may be purchased at J.C. Penney Company ONLY.

Procedures for implementing and enforcing the code included a two-week phase-in and provided for ongoing education about the code's requirements. It also provided:

> 2. After September 5, 1995, students who fail to comply with the Dress Code shall be advised of the requirements of the Dress Code and offered use of a uniform for the day, and a parent contact shall be made.
>
> 3. Students who refuse to comply with the Dress Code shall be given the opportunity to transfer to another school, either within or without the District. The Phoenix Elementary School District No. 1 shall assure such student's admission to another school located within the District.

On September 6, the Students wore clothing that did not comply with the dress code. One wore a T-shirt with a United States flag

---

1. In July 1995, A.R.S. § 15–342(22) was enacted to specifically empower public schools to implement mandatory dress codes.

and logos stating "USA," "I support my country," and "America." The other wore a T-shirt with a picture of Jesus Christ, "Jesus," "True Spirit," and a Bible with the words "The School of Higher Learning." That day, the Parents informed the Academy that the Students would never comply with the dress code, insisting they were entitled to opt out of it, and that enforcement of the code violated the Students' First Amendment right of free speech. Later that day, the School District delivered transfer letters to the Parents, notifying them that the Students had been transferred to another school in the district which did not have a dress code, effective September 7. On September 7, Parents and Students marched onto the Academy's campus, entered the classrooms without permission, and distributed literature to other students disparaging the dress code.

In separate actions, each side sought declaratory and injunctive relief. After consolidating the cases, the trial court conducted a hearing, made extensive findings of fact, and concluded that the mandatory dress code did not offend the First Amendment to the United States Constitution. This appeal followed.

## DISCUSSION

We accept the trial court's factual findings unless they are clearly erroneous or not supported by any credible evidence, *Imperial Litho/Graphics v. M.J. Enterprises,* 152 Ariz. 68, 730 P.2d 245 (App.1986), and review questions of constitutionality de novo. *Gemstar Ltd. v. Ernst & Young,* 185 Ariz. 493, 917 P.2d 222 (1996); *see also Jews for Jesus, Inc. v. Board of Airport Comm'rs of City of Los Angeles,* 785 F.2d 791 (9th Cir.1986), *judgment aff'd,* 482 U.S. 569, 107 S.Ct. 2568, 96 L.Ed.2d 500 (1987). Relying on *Cornelius v. NAACP Legal Defense and Educational Fund,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985), and *Pendley v. Mingus Union High School District No. 4,* 109 Ariz. 18, 504 P.2d 919 (1972), the trial court found that the dress code neither facially nor as applied violated the Students' First Amendment rights to free speech. The court applied the forum analysis of *Cornelius* because it found that the dress code regulated the medium of expression, not the message. It

also found that the Academy is not a public forum and that the dress code is reasonably related to "appropriate matters of concern to the School Board and that the policy itself [was] reasonable." Finally, the court balanced the interests of the Students against the need for the dress code, finding "that the School Board's intent was to provide a mandatory uniform policy which would benefit the student body as a whole" and "the interests of the entire student body outweigh[ed] [the Students'] freedom of expression rights."

■ Appellants argue that the T-shirts bearing logos expressing religious and political sentiments are protected speech under the First Amendment and are subject to the stringent review of *Tinker v. Des Moines Independent Community School District,* 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969), instead of the less stringent standard in *Cornelius.* We find the *Tinker* analysis inapplicable and agree with the trial court that the *Cornelius* analysis is appropriate.

In *Tinker,* the United States Supreme Court overturned the school district's suspension of students who wore black armbands to protest the Vietnam war, finding that the students were suspended because the school officials disagreed with the students' viewpoint. *Tinker* and its progeny are directed at content-based restrictions on speech. In contrast, the evidence shows the School District's dress code is not intended to restrict speech, but is a content-neutral regulation of student dress that the trial court found furthers reasonable policies and goals of the Academy.

■ We also agree with the trial court that under the *Cornelius* standard, the code's content-neutral restrictions do not contravene the First Amendment. In *Cornelius,* the NAACP Legal Defense and Education Fund and other similar organizations challenged a restriction imposed by executive order which potentially inhibited them from participating in fundraising through the Combined Federal Campaign, a charity drive aimed at federal and military personnel. The restrictions allowed participation only by tax-exempt, nonprofit charitable groups supported by public contributions that provided

Reversing the appeals court, the United States Supreme Court noted that the First Amendment includes a right to solicit contributions and that the extent to which the government may curtail that right depends upon whether the forum involved is public or nonpublic. Finding that the public workplace is a nonpublic forum, the court held that the government could restrict access "as long as the restrictions are 'reasonable and [are] not an effort to suppress expression merely because public officials oppose the speaker's view.'" 473 U.S. at 798, 105 S.Ct. at 3448, 87 L.Ed.2d at 576, *quoting Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 46, 103 S.Ct. 948, 955, 74 L.Ed.2d 794, 803 (1983) (holding teacher's internal mail system a nonpublic forum).

Similarly, we must decide if the Academy campus is a traditional public forum, a forum created by government designation, or a nonpublic forum. *See Perry.* Traditional public fora are those places or means of communication "which by long tradition or by government fiat have been devoted to assembly and debate," *id.* at 45, 103 S.Ct. at 954, 74 L.Ed.2d at 802, such as streets and public parks. They do not include all government property. *Cornelius.* Government designated fora are places or means for communication which the government has intentionally designated for discussion and debate. The government must show a compelling governmental interest to exclude speakers from such a forum. *Id.* A nonpublic forum, in contrast, is one to which the public does not have access and in which the government can impose reasonable time, place, and manner restrictions upon speech in light of the purpose of the forum. *Id.*

A school is generally considered a nonpublic forum for purposes of the First Amendment. *Lamb's Chapel v. Center Moriches Union Free Sch. Dist.,* 508 U.S. 384, 113 S.Ct. 2141, 124 L.Ed.2d 352 (1993); *Hazelwood Sch. Dist. v. Kuhlmeier,* 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988);

*Hedges v. Wauconda Community Sch. Dist. No. 118,* 9 F.3d 1295 (7th Cir.1993); *Miles v. Denver Pub. Schs.,* 944 F.2d 773 (10th Cir. 1991). Moreover, school officials have great latitude to regulate activities in a manner "reasonably related to legitimate pedagogical concerns." *Hazelwood,* 484 U.S. at 273, 108 S.Ct. at 571, 98 L.Ed.2d at 604.

The Academy closely monitored nonstudents, including parents, who came onto the campus. It never had an "open door" policy, even regulating time, place, and manner as to nonschool sponsored groups and activities. The trial court correctly concluded that the Academy is a nonpublic forum.

We next determine whether the evidence supports the trial court's finding that the dress code bears a reasonable relation to the pedagogical purpose of the school. *Hazelwood Sch. Dist.* The School District presented evidence that it adopted the dress code because it:

1. Promotes a more effective climate for learning
2. Creates opportunities for self-expression
3. Increases campus safety and security
4. Fosters school unity and pride
5. Eliminates 'label competition'
6. Ensures modest dress
7. Simplifies dressing
8. Minimizes costs to parents.

The trial judge also heard testimony from a police officer about increased campus safety as a result of the dress code and from California school administrators who had observed the effects on California campuses with similar dress codes. The administrators testified that such codes reduce clothing distractions, increase campus safety, improve school spirit, level socioeconomic barriers, "ensur[e] that students dress appropriately," and reduce staff and faculty time required to enforce the dress code. Thus, the court had ample evidence to support its finding that the policies underlying the adoption of the dress code were reasonably related to the Academy's mission.

The *Cornelius* analysis also involves consideration of whether there are alternative

**480**

avenues of expression. Although the trial court did not address the issue, we note that the dress code provided students with such alternative methods of expression as jewelry, buttons, non-uniform days, and petitions. *See Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (ample alternative channels of communication).

### CONCLUSION

The School District's content-neutral dress code constitutionally regulates the Students' First Amendment speech rights in the non-public forum of their school. It regulates a method, not a message, and is reasonable in view of the pedagogical mission of the Academy.

Affirmed.

ESPINOSA, P.J., and CHARLES S. SABALOS, J.*, concur.