**UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

No. 99-31318

DIANA CANADY, BILLY JONES, PAMELA JONES, THOMAS ATTAWAY,
EARL HODGKINS, ELIZABETH FISHER, CAROL AYERS, DIANE JONES,
TONY NEESE, DELLA MCCRORY, VERONICA WALSH, MICHAEL WALSH,
PATRICIA VIDAL, DAVID TURNER, LORI WRIGHT, TIM BRODERICK,
KEN HENDERSON, JULIE CHRISTEN, DIANE ALLEN, CAROL WILHELM,
BECKY EMERSON, TONJA DAVIS, KIRA HIGGINBOTHAM, BRIAN
SHOEBRIDGE, ED WALKER, NANCY KIRKPATRICK, WILTON LERITTE,
KAREN BUTTERFIELD, JANICE HARVILLE, MARIAN TYSON, JONI
HASSLE, MARY VANCE, KEN FOSTER, BRUCE DOMINQUE, TERRY MONROE,
THERESA HARMON, CINDY MCCARL, DARLY MCCARL, VICKI ALLEN,
BONNIE MONROE, ALL PLAINTIFFS,

Plaintiffs-Appellants,

VERSUS

BOSSIER PARISH SCHOOL BOARD,

Defendant-Appellee.

Appeal from the United States District Court
For the Western District of Louisiana

January 23, 2001

Before DUHÉ and PARKER, Circuit Judges and FOLSOM\*, District Judge.

ROBERT M. PARKER, Circuit Judge:

---

\*District Judge of the Eastern District of Texas, sitting by
designation.

1

This Court is called on once again to assess the steps taken by school officials to improve the quality of education in our nation's public schools. While maintenance of order and promotion of acceptable standards of classroom conduct are synonymous with ensuring an adequate education system, school officials are not given free reign to abridge students' constitutional rights. *See Tinker v. Des Moines Indep. School Dist.*, 393 U.S. 503, 511-14 (1969). In this case we review the district court's order granting summary judgment in favor of the Bossier Parish School Board. The district court concluded that the school board's rule implementing a mandatory school uniform policy did not violate the First Amendment rights of its students.

## I.

In 1997, the Louisiana Legislature amended section 17:416 of the Louisiana Revised Civil Statutes to allow parish school boards the discretion to implement mandatory uniforms, provided the school board gives the students' parents written notice explaining the dress requirements. *See* LA. REV. CIV. STAT. § 17:416.7 (1997). In the 1998-1999 school year, the Bossier Parish School Board required sixteen of its schools to adopt mandatory uniforms in order to determine the effect of the uniforms on the learning environment. After receiving favorable results, the School Board implemented mandatory school uniforms in all of the parish public schools beginning with the 1999-2000 school year. The average uniform

2

consisted of a choice of two colors of polo or oxford shirts and navy or khaki pants. The schools alerted parents by letter about the dress specifications, provided a list of local vendors supplying the required clothing, and displayed an example of the uniform at each school.

Several parents of students in the Bossier Parish School System filed this suit in federal court seeking an injunction against the schools' enforcement of the uniform policy. The parents claimed that the dress code violated their children's First Amendment rights to free speech, failed to account for religious preferences, and denied their children's liberty interest to wear clothing of their choice in violation of the Fourteenth Amendment.

Both the parents and the School Board filed for summary judgment. The parents presented affidavits arguing that their children's constitutional rights were violated and that the School Board's reasons for implementing the uniform policy were unfounded. The School Board offered affidavits of school teachers and principals who concluded that the uniform policy reduced behavior problems and increased test scores. The school officials recounted statistics showing the reduction in disciplinary actions and rise in test scores after the School Board adopted uniforms. Based on these affidavits, the district court entered summary judgment in favor of the School Board. The court concluded that the mandatory uniform policy did not violate the student's First Amendment rights and that the summary judgment evidence did not raise a genuine

3

issue of material fact concerning the effectiveness of the uniform policy.

The parents' argument on appeal is two-fold. The parents first argue that the trial court erred by concluding that the enforcement of the school uniform policy did not violate their children's constitutional rights. The parents also claim that the trial court abused its discretion by denying them additional time to conduct discovery.

## II. First Amendment

We review a district court's order granting a motion for summary judgment de novo. *Kennedy v. Tangipahoa Parish Library Board of Control*, 224 F.3d 359, 356 (5th Cir. 2000). A district court properly grants summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions of file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "Although we consider the evidence and all reasonable inferences to be drawn therefrom in the light most favorable to the nonmovant, the nonmoving party may not rest on the mere allegations or denials of its pleadings, but must respond by setting forth specific facts indicating a genuine issue for trial." *Kennedy*, 224 F.3d at 365 (quoting *Rushing v. Kansas City S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999). The substantive law dictates which facts are material.

4

*See Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 189 (5th Cir. 1991).

A.

Before determining whether the School Board properly imposed the mandatory uniform policy, we must ascertain whether a person's choice of attire qualifies as speech protected by the First Amendment. "The question of the protected status of speech is one of law, and as such, we review the issue de novo." *Cabrol v. Town of Youngsville*, 106 F.3d 101, 109 (5th Cir. 1997).

The district court, relying on *Karr v.Schmidt*, 460 F.2d 609 (5th Cir. 1972), concluded that choice of clothing is a matter of personal taste or style and is not afforded First Amendment protection. *See also Littlefield v. Forney Indep. School Dis.*, 108 F. Supp. 2d 681 (N.D. Tex. 2000) (concluding that a student's choice of clothing was not protected by the First Amendment). In *Karr*, this Court held that a male student's choice of hair length did not convey sufficient communicative content to warrant First Amendment coverage. *See Karr*, 460 F.2d at 613-14. The Court reasoned that "[f]or some, no doubt, the wearing of long hair is intended to convey a discrete message to the world. But for many, the wearing of long hair is simply a matter of personal taste or the result of peer group influence." *Id.* The district court concluded that clothing and hair length were essentially the same for purposes of constitutional protection. We disagree. While a

person's choice of clothing may be predicated solely on considerations of style and comfort, an individual's choice of attire also may be endowed with sufficient levels of intentional expression to elicit First Amendment shelter.

The Supreme Court recognizes that conduct coupled with communicative content raises First Amendment concerns. *See Buckley v. Valeo*, 424 U.S. 1, 16-17 (1976); *Spence v. Washington*, 418 U.S. 405, 409 (1974); *United States v. O'Brien*, 391 U.S. 367 (1968); *Cox v. Louisiana*, 379 U.S. 559, 563-64 (1965). However, the First Amendment does not safeguard a limitless variety of behavior. *See City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989); *O'Brien*, 391 U.S. at 376. "In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we [must] ask[] whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Texas v. Johnson*, 491 U.S. 397, 404 (1989) (quoting *Spence*, 418 U.S. at 410-11.).[1] When assessing the appellants' claim, we

_____

[1]In *Karr*, this Court supported its conclusion that hair length was not protected by the First Amendment by assessing the following language in *Tinker*:
> The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment. . . . Our problem involves direct, primary First Amendment rights akin to "pure speech."

393 U.S. at 507-08. Judge Morgan surmised that the Supreme Court's statement suggested that hair style never warrants First Amendment protection. If this interpretation is correct, then every choice

look to the particular activity, combined with the factual context and environment in which it was undertaken. *See Spence*, 418 U.S. at 409-10; *Cabrol*, 106 F.3d at 109.

A person's choice of clothing is infused with intentional expression on many levels. In some instances, clothing functions as pure speech. A student may choose to wear shirts or jackets with written messages supporting political candidates or important social issues. Words printed on clothing qualify as pure speech and are protected under the First Amendment. *See Cohen v. California*, 403 U.S. 15, 18 (1971); *Board of Airport Comm'r of the City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987).

Clothing may also symbolize ethnic heritage, religious beliefs, and political and social views.[2] Individuals regularly use their clothing to express ideas and opinions. Just as the students in *Tinker* chose to wear armbands in protest of the Vietnam War, students may wear color patterns or styles with the intent to

---

of clothing, regardless of the intent of the wearer to communicate a particularized message, would not qualify as protected speech. We reject this analysis of the Supreme Court's statement in *Tinker* in favor of the contemporary test for assessing expressive conduct outlined in *Spence* and *Johnson*.

[2]The Supreme Court suggested that clothing may have symbolic meaning in religious contexts. *See Board of Airport Comm'r of the City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 575 (1987) (stating that the airport regulation prohibited "talking and reading, or the wearing of campaign buttons and symbolic clothing").

express a particular message.  *See Tinker*, 393 U.S. at 508-14.  The choice to wear clothing as a symbol of an opinion or cause is undoubtedly protected under the First Amendment if the message is likely to be understood by those intended to view it.  *See Johnson*, 491 U.S. at 404; *Spence*, 418 U.S. at 410-11.

Finally, students in particular often choose their attire with the intent to signify the social group to which they belong, their participation in different activities, and their general attitudes toward society and the school environment.  While the message students intend to communicate about their identity and interests may be of little value to some adults, it has a considerable affect, whether positive or negative, on a young person's social development.   Although this sort of expression may not convey a particularized message to warrant First Amendment protection in every instance, we cannot declare that expression of one's identity and affiliation to unique social groups through choice of clothing will never amount to protected speech.[4]

We therefore disagree with the district court's blanket assertion that, like the length of a male student's hair, clothing does not contain sufficient communicative content.  In the instant

---

[4]We do not conclude that every choice of clothing expresses a particularized message, and we make no judgment as to the extent or type of clothing necessary to communicate a discrete message in order to afford First Amendment protection.  Our analysis simply acknowledges that certain choices of clothing may have sufficient communicative content to qualify as First Amendment activity.

8

case, we make no determination as to whether the appellants' summary judgment evidence demonstrates student activity covered by the First Amendment. For purposes of this opinion, however, we assume that the First Amendment applies to the students' choice of clothing. *See Clark*, 468 U.S. at 293 (assuming that sleeping in public parks was First Amendment activity in order to address the validity of the statute in dispute).

B.

While certain forms of expressive conduct and speech are sheltered under the First Amendment, constitutional protection is not absolute, especially in the public school setting. Educators have an essential role in regulating school affairs and establishing appropriate standards of conduct. *See Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 681 (1986). "A school need not tolerate student speech that is inconsistent with its 'basic educational mission,' even though the government could not censor similar speech outside the school." *Hazelwood School Dis. v. Kuhlmeier*, 484 U.S. 260, 266 (1988) (quoting *Fraser*, 478 U.S. at 685). School boards, not federal courts, have the authority to decide what constitutes appropriate behavior and dress in public schools. *See id.* at 267.

The level of scrutiny applied to regulations of student expression depends on the substance of the message, the purpose of

9

the regulation, and the manner in which the  message is conveyed.[5] The Supreme Court has established three categories of student speech regulations.

The first category involves school regulations directed at specific student viewpoints.  In *Tinker v. Des Moines Independent School District*, school officials suspended students for wearing black armbands in protest of the Vietnam War.  The Court held that suppression of the students' political expression could not be validated when the students' behavior did not contribute to a disturbance in the educational environment.  *See Tinker*, 393 U.S. at 508.  The Court concluded that when officials attempt to restrict students from expressing particular political views, they must demonstrate that the expression would "substantially interfere with the work of the school or impinge upon the rights of other students."  *Id*. at 509 (quoting *Burnside v. Byars*, 363 F.2d 744, 749 (5th Cir. 1966)).

The second category of regulated student expression involves lewd, vulgar, obscene, or plainly offensive speech.  *See Chandler*

---

[5]*See Hazelwood School Dis. v. Kuhlmeier*, 484 U.S. 260 (1988); *Bethel School Dis. v. Fraser*, 478 U.S. 675 (1986); *Tinker v. Des Moines Indep. School Dis.*, 393 U.S. 503 (1969). *See also Boroff v. Van Wert City Board of Educ.*, 220 F.3d 465, 467-71 (7th Cir. 2000) (analyzing the Supreme Court's decisions in *Tinker*, *Fraser*, and *Kuhlmeier*); *Henerey v. City of St. Charles*, 200 F.3d 1128, 1132 (8th Cir. 1999) (comparing the level of scrutiny applied in *Tinker* and *Hazelwood*); *Chandler v. McMinnville School Dis.*, 978 F.2d 524, 527-29 (9th Cir. 1992) (analyzing the distinctions between the Supreme Court's decisions in *Tinker*, *Fraser*, and *Kuhlmeier*).

*v. McMinnville School Dis.*, 978 F.2d 524, 529 (9th Cir. 1992). In *Bethel School District v. Fraser*, school officials suspended a student for delivering a nomination speech at a school assembly because the speech contained sexually explicit metaphors that the school deemed inappropriate for the members of the audience. *See Fraser*, 478 U.S. at 677-79. The Supreme Court, diverging from the *Tinker* analysis, held that it was appropriate for educators to protect students from sexually explicit, indecent, or lewd speech. The Court was careful to note that "[u]nlike the sanctions imposed on the students wearing armbands in *Tinker*, the penalties imposed in [*Fraser*] were unrelated to any political viewpoint." *Id*. at 685.

The final category of regulated student speech is student expression that is related to school-sponsored activities. In *Hazelwood School District v. Kuhlmeier*, students working on a highschool newspaper sought injunctive relief against the school district and school officials. The students argued that their First Amendment rights were violated when the school authorities deleted certain newspaper articles relating to pregnancy and the affects of divorce on the lives of adolescents. *See Kuhlmeier*, 484 U.S. at 267. The Supreme Court concluded that the *Tinker* analysis does not apply when "the First Amendment requires a school affirmatively to promote particular student speech." *Id*. at 270-71. After determining that schools were not traditional public forums for First Amendment activity, the Court held that school

11

officials could regulate school-sponsored activities such as publications, theatrical productions, and any other conduct related to the school's curriculum if "their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273.

C.

The facts of this case do not readily conform to either of the three categories addressed by the Supreme Court. The School Board's mandatory uniform policy is viewpoint-neutral on its face and as applied. School officials have not punished students for wearing clothing with lewd, obscene, or patently offensive words or pictures. Finally, a student's choice to wear certain apparel to school is neither an activity that the school sponsors nor is it related to the school curriculum. Thus, the appellants' argument does not easily correspond to either *Tinker*, *Fraser*, or *Kuhlmeier*.

While *Tinker* addressed disciplinary action by school officials directed at the political content of student expression, several circuits have relegated cases that do not comport with the Court's reasoning in *Fraser* and *Kuhlmeier* to this viewpoint-specific category. *See Henerey v. City of St. Charles*, 200 F.3d 1128, 1132 (8th Cir. 1999) (suggesting that the higher standard in *Tinker* applies to cases outside the context of school-sponsored activities); *Chandler v. McMinnville School Dis.*, 978 F.2d 524, 529 (9th Cir. 1992) (concluding that any case that does not involve vulgar, lewd, obscene or plainly offensive speech, and is free of

12

the "imprimatur of the school," falls under the *Tinker* analysis). *But cf. Muller v. Jefferson Lighthouse School*, 98 F.3d 1530, 1540 (7th Cir. 1996) (applying the *Kuhlmeier* standard to viewpoint-oriented restrictions on religious propaganda because the First Amendment activity involved elementary school students). Applying the *Tinker* analysis to all other restrictions on student speech does not account for regulations that are completely viewpoint-neutral. The Supreme Court clearly thought it necessary to apply a higher standard of scrutiny to "personal expression that happens to occur on the school premises," as opposed to First Amendment activity sponsored by the school. *Kuhlmeier*, 484 U.S. at 271. The Court also held that a lower standard should apply when school restrictions of student expression are "unrelated to any political viewpoint." *Fraser*, 478 U.S. at 685. Because (1) choice of clothing is personal expression that happens to occur on the school premises and (2) the School Board's uniform policy is unrelated to any viewpoint, a level of scrutiny should apply in this case that is higher than the standard in *Kuhlmeier*, but less stringent than the school official's burden in *Tinker.* Both the traditional time, place and manner analysis and the *O'Brien* test for expressive conduct satisfy this requirement. The time, place and manner analysis and the *O'Brien* test are virtually the same standards of scrutiny for purposes of assessing the validity of the school uniform policy. *See Clark v. Community for Creative Nonviolence*,

13

468 U.S. 288, 298 (1984) (comparing the time, place and manner analysis to the test outlined in *United States v. O'Brien*, 391 U.S. 367 (1968)).  Thus, the School Board's uniform policy will pass constitutional scrutiny if it furthers an important or substantial government interest; if the interest is unrelated to the suppression of student expression; and if the incidental restrictions on First Amendment activities are no more than is necessary to facilitate that interest.  *See O'Brien*, 391 U.S. at 377.

Improving the educational process is undoubtedly an important interest of the Bossier Parish School Board.  *See Kuhlmeier*, 484 U.S. at 271-72.  The School Board's purpose for enacting the uniform policy is to increase test scores and reduce disciplinary problems throughout the school system.  This purpose is in no way related to the suppression of student speech.  Although students are restricted from wearing clothing of their choice at school, student's remain free to wear what they want after school hours. Students may still express their views through other mediums during the school day.  The uniform requirement does not bar the important "personal intercommunication among students" necessary to an effective educational process.  *Tinker*, 393 U.S. at 512.

Appellants argue that the uniform requirement does not adequately further the School Board's interest in improving education in the parish schools.  In its summary judgment

14

affidavits, the School Board presented statistics showing that, after one year of implementing school uniforms in several parish schools, discipline problems drastically decreased and overall test scores improved. The appellants offered no affidavits that raise a fact issue concerning this concreted evidence. In their affidavits, appellants argue that the School Board's reasons for implementing the uniforms were inadequate in light of the students' First Amendment rights. As previously noted, however, it is not the job of federal courts to determine the most effective way to educate our nation's youth. *See Kuhlmeier*, 484 U.S. at 267. Because the appellants' summary judgment evidence does not raise an issue of fact as to whether the uniform policy furthers the improvement of education in the Bossier Parish school system, we affirm the district court's order granting summary judgment on the appellants' First Amendment claim.[6]

### III. Fourteenth Amendment

The appellants also argue that students have a "liberty" interest in choosing to wear whatever clothing they wish. Because the First Amendment provides an adequate source of constitutional protection in this case, there is no reason for this Court to

---

[6]The appellants also claim that the uniform policy does not provide exceptions for students who wish to wear religious attire on days when their faith calls them to do so. We agree with the trial court's determination that appellants lack standing to assert this issue. Appellants have not established that the uniform policy has interfered with their right to free exercise of religion. *See Rogers v. Brockette*, 588 F.2d 1057(5th Cir. 1979).

15

address a general substantive due process claim. *See Graham v. Connor*, 490 U.S. 386, 395 (1989); *Conn v. Gabbert*, 526 U.S. 286, 293 (1999); *Boroff v. Van Wert City Board of Educ.*, 220 F.3d 465, 471 (7th Cir. 2000) (holding that substantive due process should not be used as a fallback argument when the First Amendment directly addresses the subject).

Appellants further argue that requiring parents to buy uniforms creates too large a financial burden and effectively denies some students the right to a free education as provided by the Louisiana Constitution. Appellants' brief does not adequately outline a cognizable constitutional argument on which this Court can grant relief, and it is therefore abandoned. *See Ross v. University of Texas at San Antonio*, 139 F.3d 521, 524 n.1 (5th Cir. 1998); *Yohey v. Collins*, 985 F.2d 222 (5th Cir. 1993). In any event, the School Board has provided evidence that school uniforms are donated by organizations to the less fortunate. Because uniforms are available at inexpensive retail stores, it is hard to imagine how the purchase of uniforms consisting of a certain color of shirt and pants could be any more expensive than the normal cost of a student's school clothes.

IV. The Discovery Process

Finally, the Appellants contend that the district court improperly denied them additional time to conduct discovery before the court ruled on the School Board's motion for summary judgment.

16

The district court delayed ruling on the appellants' motion for summary judgment and instead issued its memorandum and order granting the School Board's motion, which was filed shortly thereafter. We review the district court's decision to deny further discovery for abuse of discretion. *See Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 28 F.3d 1388, 1394 (5th Cir. 1994) (citing *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 684 (5th Cir. 1985), *cert, denied*, 475 U.S. 1011 (1986)).

On September 2, 1999, the appellants moved for an extension of time to respond to the School Board's motion, claiming that they needed to conduct additional discovery. They asked the court to extend their answer date to forty days from the day of the court's ruling on their own motion for summary judgment. The court granted the appellants an extension, but required them to submit their response by September 23. The appellants filed their response in which they requested more time to conduct discovery. The district court issued its final order on November 10, 1999.

In order to obtain a continuance of a motion for summary judgment for discovery purposes, a party must set forth some statement to the court indicating why additional discovery is necessary and "how additional discovery will create a genuine issue of material fact." *Leatherman*, 28 F.3d at 1395 (quoting *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1441 (5th Cir. 1993)). It

17

does not appear from the record that the appellants ever established how additional discovery would create a fact issue concerning the validity of the School Board's summary judgment evidence. The appellants had ample time to conduct discovery in this case, as evidenced by their own motion for summary judgment. In any event, the district judge granted the appellants additional time to conduct discovery after the School Board submitted its affidavits supporting the summary judgment motion. Based on these facts, we conclude that the district court did not abuse its discretion by denying the appellants any more time to conduct discovery. Accordingly, we affirm the district court's order granting summary judgment in favor of the Bossier Parish School Board.

AFFIRMED