RHESA HAWKINS BARKSDALE, Circuit Judge,
specially concurring:
I concur in the result and in all but part III. (“First Amendment Expressive Conduct Claims”) of the majority opinion.
I.
Concerning part III., our court utilizes assumptions regarding the claims of coerced-speech and restraint on free expression, rather than directly addressing those claims. By doing so, we simply invite, if not encourage, needless, repetitive litigation.
II.
The wearing of the uniform at issue is not “expression” for First Amendment purposes. Accordingly, there is no coerced speech. Likewise, for the restraint-on-free-expression claim, and on this record, the requisite expression has not been demonstrated.
A.
I regret we have not confronted the issue our court avoided in Canady v. Bossier Parish Sch. Bd., 240 F.3d 437 (5th Cir.2001): whether the wearing of a school uniform devoid of any logo, symbol, or motto is “expression” for First Amendment purposes. The answer to that question would resolve directly the coerced-speech claim at issue. Obviously, if that which is coerced is not speech, then speech has not been coerced.
1.
The majority correctly acknowledges, as did our court in Canady, that the two-part test from Spence v. Washington, 418 U.S. 405, 410-11, 94 S.Ct. 2727, 41 L.Ed.2d 842 (1974), is the correct analysis for discerning whether conduct — such as the wearing of a school uniform — is sufficiently expressive to merit First Amendment protection. Canady explains the application of that test:
“In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we [must] ask[ ] whether ‘[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.’ ” When assessing the appellants’ claim, we look to the particular activity, combined with the factual context and environment in which it was undertaken.
240 F.3d at 440 (quoting Texas v. Johnson, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989))(alteration in original) (citations omitted). Unfortunately, the majority, as did the Canady court, fails to *296 adequately apply Spence to determine whether a school uniform specifically, as opposed to clothing generally, can constitute expression. Instead, as was done in Canady, the majority assumes for purposes of this appeal that the wearing of the uniform- at issue constitutes expressive conduct.
Appellants (collectively, Students) assert that, for cases of coerced speech, the two-part Spence test was abrogated by Hurley v. Irish-Am. Gay, Lesbian and Bisexual Group of Boston, 515 U.S. 557, 115 S.Ct. 2338, 132 L.Ed.2d 487 (1995) (holding Massachusetts public accommodation law unconstitutional as applied to require private organizers of St. Patrick’s Day parade to include gay, lesbian, and bisexual group as its own parade unit). They rely on the Court’s statement that “a narrow, succinctly articulable message is not a condition of constitutional protection, which if confined to expressions conveying a ‘particularized message,’ would never reach the unquestionably shielded painting of Jackson Pollock, music of Arnold Schoenberg, or Jab-berwoeky verse of Lewis Carroll”. Id. at 569, 115 S.Ct. 2338 (citation omitted).
Of course, where speech is pure, a particularized message has never been required; pure speech is entitled to “comprehensive protection under the First Amendment”. Tinker v. Des Moines Indep. Com. Sch. Dist., 393 U.S. 503, 505-06, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). The Spence test, on the other hand, was established to address speech that is less than pure: namely, “expression of an idea through activity”. Spence, 418 U.S. at 411, 94 S.Ct. 2727.
That wearing a school uniform is not pure speech is supported by Tinker, which involved students being suspended for wearing black armbands to school to protest the conflict in Vietnam. In distinguishing the armband-suspension from other clothing-related regulations, the Court explained: “The problem posed by the present case does not relate to regulation of the length of skirts or the type of clothing, to hair style, or deportment.... Our problem involves direct, primary First Amendment rights akin to ‘pure speech’”. Tinker, 393 U.S. at 507-08, 89 S.Ct. 733. Accordingly, for determining what — if any — expressive content there is in wearing the school uniform at issue, we must follow Canady’s instruction and engage in the two-part Spence analysis.
While the Students have proffered some evidence that the Forney Independent School District (FISD) intended to convey a message in adopting the uniform policy — namely, pride in and respect for the values of FISD and its schools — I question whether such a message is sufficiently particularized as to satisfy Spence. But, even if FISD did intend that message, I doubt there is any likelihood whatsoever, no less the “great likelihood” required by Spence, that such a message would be understood by anyone who happens to see students’ blue or khaki trousers (or skirt) and solid-colored shirt. When worn in the factual context and environment in which students are required to wear the uniform — that is, school — the uniform conveys at most the following message: that the wearer is a student.
Accordingly I would hold that, as a matter of law, the wearing of a school uniform devoid of any logo, symbol, or motto — like the wearing of long hair that was at issue in this court’s en banc decision in Karr v. Schmidt, 460 F.2d 609 (5th Cir.1972)(en banc), cert. denied, 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972)—does not involve “sufficient communicative content” to qualify as expression for First Amendment purposes. Consequently, the requirement to wear such a uniform cannot constitute coerced speech. As the Supreme Court *297 implied in Hurley, where the disfavored message is “difficult to identify”, there is no risk that the allegedly coerced party is forced “to propound a particular point of view”. Hurley, 515 U.S. at 574-75, 115 S.Ct. 2338.
2.
Of course, deciding that the wearing of such a school uniform is not expressive conduct alleviates the need to examine the coercion claim under the four-part O’Brien test regarding content-neutral restrictions on expressive conduct. See United States v. O’Brien, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). Indeed, I question whether O’Brien applies to school uniform cases. See, e.g., Phoenix Elementary Sch. Dist No. 1 v. Green, 189 Ariz. 476, 943 P.2d 836 (1997) (school uniform policy is a content-neutral regulation of the medium, not the message; accordingly, nonpublic forum analysis is the appropriate test); see also Canady, 240 F.3d at 443 (noting the similarity of O’Brien to traditional time, place, manner analysis). But that question is best left for another day. Because coercion to wear the uniform at issue is not coercion to speak, there is no need to apply any degree of heightened scrutiny.
B.
My conclusion that the wearing of the school uniform at issue is not expressive does not, of course, dictate a result with regard to the Students’ other First Amendment claim: restraint on free expression. For even if the uniform is not imbued with expressive value, the uniform policy still precludes the Students from wearing clothing of their choice that may be expressive.
In addressing this second claim, the majority again follows the lead of the Canady court in assuming that the uniform policy implicates expressive clothing choices. Accordingly, the majority proceeds with the O’Brien analysis.
Although “certain choices of clothing may have sufficient communicative content to qualify as First Amendment activity”, Canady, 240 F.3d at 441 n. 3, the present record contains only vague depictions of messages the Students supposedly intend to convey through clothing choice. The deposition testimony of one Student is typical:
I mean, I don’t like them [school uniforms]. I don’t like that we have to wear the same thing every day. It’s a routine that I don’t like to be in. I don’t like to be told what to wear. I would rather wear something that expresses who I am.
Arguably, the various “messages” proffered by Students in their depositions may be loosely grouped around the concept of individuality. But, I cannot agree — nor will I assume' — 'that such a message satisfies the two-part Spence test for discerning expressive conduct. Because the Students have failed to articulate a particularized message likely to be understood by anyone, I would not examine their free expression challenge under the O’Brien test as the majority does. Nor would I apply any degree of heightened scrutiny. Instead, I would ask simply “whether the regulation is reasonably intended to accomplish a constitutionally permissible state objective”. Karr, 460 F.2d at 616. I conclude it is.
III.
“[T]he [Supreme] Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools”. Tinker, 393 U.S. at 507, 89 S.Ct. 733 (em *298 phasis added). In accordance with state law, and in response to a perceived need, FISD has prescribed and controlled the wearing of uniforms in its schools through a uniform policy that is consistent with fundamental constitutional safeguards. We should address this issue head-on.