**Dan and Susan PHILLIPS, as natural and legal guardians of Mary August Phillips, a minor child, Plaintiffs,**

**v.**

**OXFORD SEPARATE MUNICIPAL SCHOOL DISTRICT, Dr. Jerry E. Webb, Superintendent of the Oxford Separate Municipal School District, Maxine Woolsey, Board President of the Oxford Separate Municipal School District, and Oran Jewell, Buddy Chain, Helen Phillips, and Ramona Reed, who are all board members of the Oxford Separate Municipal School District, Defendants.**

No. 2:03CV292–M–A.

United States District Court, N.D. Mississippi, Delta Division.

Sept. 22, 2003.

**644**

Thomas H. Freeland, III, Thomas H. Freeland, IV, Freeland & Freeland, Oxford, TX, for plaintiffs.

Guy T. Gillespie, III, Guy T. Gillespie, III, Attorney, Oxford, TX, for defendants.

## MEMORANDUM OPINION AND ORDER

MILLS, District Judge.

This matter is before the Court on the plaintiffs' complaint for a temporary restraining order and injunctive relief [1–1]. The Court has heard arguments of counsel and has reviewed the pleadings, affidavits and exhibits and is prepared to rule.

## THE PARTIES

The plaintiffs are Dan Phillips and Susan Phillips, as natural and legal guardians of Mary August Phillips, a minor child who is currently a seventh-grader in the Oxford Middle School. The defendants are the Oxford, Mississippi Separate Municipal School District; Dr. Jerry E. Webb, the Superintendent of the School District; and the members of the school board (collectively "the School District"). The plaintiffs seek to enjoin the School District from infringing on Mary August Phillips' free speech rights in connection with a seventh-grade election.

## JURISDICTION

Jurisdiction in this case is attached pursuant to the provisions of 42 U.S.C. Section 1983 and 28 U.S.C. Sections 1331(a) and 1343. The specific federal questions to be addressed concern conflicts between the Free Speech and Establishment Clauses of the First Amendment to the United States Constitution.

## THE FACTS

Mary August Phillips is a candidate for seventh grade student council representative at the Oxford Middle School. Such elections are ostensibly held to teach children the value of participating in the "democratic process." The elections are scheduled for Tuesday, September 23, 2003, at the Oxford Middle School.

Prior to the campaign, Mary August was required to sign a statement prepared by school authorities listing election rules for student council candidates. It is undisputed that the poster in question is in compliance with size and location rules. The rules provide no content limitations, though the student handbook states that all posters are subject to approval by the school principal.

On Tuesday, September 16, 2003, Mary August Phillips placed a campaign poster in the school hall which read: "He chose Mary ... You should, too. Mary August for Student Council!" Between the words "Mary" and "You" is a color reproduction of a Renaissance painting of the subjects generally recognized as "Madonna and Child."

According to the child's affidavit filed in this cause, one of her teachers, a Ms. Prater, first complained that she "did not agree with the poster" and that the child should not "mix religion and politics." According to the plaintiffs, Ms. Prater apparently triggered the events which occurred on September 16, 17 and 18 as the maligned poster yo-yoed up and down from the school walls, dependent upon the vacillating expressions of middle school authority as first the vice-principal, then the guidance counselor and finally the principal responded to various complaints about the poster. The defendants say that "...there were complaints from both Christian and non-Christian parents made to the school board members and in one case directly to the superintendent." Apparently some complainants felt the school was allowing the election process to be used to establish a religion; others objected that the school was allowing religion to be ridiculed or demeaned.

The principal finally said that the poster would remain on the wall unless Dr. Webb, the school superintendent, ordered it removed. Dr. Webb, fearing a lawsuit from the objectors, ordered the poster removed on Thursday, September 18, 2003. The school authorities found themselves in this Federal Court on Friday, September 19.

## PRELIMINARY INJUNCTION STANDARD

 Entry of a preliminary injunction is discretionary with district courts. *Mississippi Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618 (5th Cir.1985). The criteria for determining whether a preliminary injunction will be granted are set forth in *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). The following requirements must be met before a party will be entitled to a preliminary injunctive relief:

(1) a substantial likelihood that plaintiff will prevail on the merits,

(2) a substantial threat that irreparable injury will result if the injunction is not granted,

(3) that the threatened injury outweighs the threatened harm to defendant, and

(4) that granting the preliminary injunction will not dis-serve the public interest.

*Id.* at 572.

## THE LAW

In *Canady v. Bossier Parish School Bd.*, 240 F.3d 437 (5th Cir.2001), a case addressing the constitutionality of requiring students to wear school uniforms, the Fifth Circuit Court of Appeals reviewed Supreme Court jurisprudence regarding free speech rights of public school students. The Fifth Circuit identified three principal lines of cases. *Canady* 240 F.3d at 442.

The first category involves school regulations aimed at specific student viewpoints. *Id.* In *Tinker v. Des Moines Indep. Community Sch. Dist.*, the Supreme

Court held that students do not shed free speech rights at the school house door. 393 U.S. 503, 506, 89 S.Ct. 733, 736, 21 L.Ed.2d 731 (1969)(holding that students had right to wear black armbands to express opposition to Vietnam conflict). The *Tinker* Court concluded that "when officials attempt to restrict students from expressing particular political views, they must demonstrate that the expression would 'substantially interfere with the work of the school or impinge upon the rights of other students.'" *Canady*, 240 F.3d at 442 (quoting *Tinker*, 393 U.S. at 509, 89 S.Ct. 733 (in turn quoting *Burnside v. Byars*, 363 F.2d 744, 749 (5th Cir. 1966))).

The second category recognized by *Canady* involves lewd or obscene student speech. In *Bethel Sch. Distr. No. 403 v. Fraser*, the Supreme Court established an exception to *Tinker*'s general rule favoring student speech. The Fraser exception applies in cases where the speech is deemed sexually explicit, indecent or lewd. *Fraser*, 478 U.S. 675, 682, 106 S.Ct. 3159, 3164, 92 L.Ed.2d 549 (1986). In *Fraser*, a student was warned that his proposed nomination speech for a fellow student running in a school election contained unacceptable sexual innuendos. *Id.* at 677–79, 106 S.Ct. 3159. The student gave the speech anyway and was suspended for several days. *Id.* The school actions were upheld in the courts. The *Canady* Court stated, "[t]he Court was careful to note that '[u]nlike the sanctions imposed on the students wearing armbands in *Tinker*, the penalties imposed in [*Fraser*] were unrelated to any political viewpoint.'" *Canady*, 240 F.3d at 442 (quoting *Fraser*, 478 U.S. at 685, 106 S.Ct. 3159).

The final category recognized by the Fifth Circuit deals expressly with student speech in the context of school-sponsored activities. In *Hazelwood School Dist. v. Kuhlmeier*, the Supreme Court distin-guished student speech which carried the imprimatur of school policy or activity from *Tinker*, which dealt with student speech completely unaffiliated with the school itself. 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988) (holding that First Amendment rights of members of school newspaper were not offended by deletion by school officials of certain articles dealing with teen pregnancy).

*Kuhlmeier* requires an initial showing that the speech occurred in a public forum before school interference may violate the constitution. *Kuhlmeier*, 484 U.S. at 270, 108 S.Ct. 562. When speech does not occur in a public forum, school officials are entitled to regulate contents of speech in any reasonable manner. *Id.* The *Kuhlmeier* Court held that "educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns." *Id.* at 273, 108 S.Ct. 562. The Court rejected the students' suggestion that school officials could only exercise prepublication control over school-sponsored speech pursuant to written regulations, as the court found such a position unduly restrictive of the educational process. *Id.* at 273, n. 6, 108 S.Ct. 562.

"Legitimate pedagogical concerns" are sparsely defined in *Kuhlmeier*. There appear to be no Fifth Circuit cases dealing expressly with the *Kuhlmeier* test in the context of school-sponsored student elections. *But see Kirkland v. Northside ISD*, 890 F.2d 794 (5th Cir.1989)(addressing *Kuhlmeier* in a different context and stating: "[I]f, as here, no public forum has been created, 'school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community.'") It is therefore helpful to examine the holdings of other federal jurisdictions to discern consistent

application of the *Kuhlmeier* "legitimate pedagogical concern" test.

In *Walz ex rel. Walz v. Egg Harbor Tp. Bd. of Educ.*, 342 F.3d 271 (3rd Cir.2003), the plaintiff, a pre-kindergarten student, participated in a seasonal, in-class, school-sponsored party which involved an exchange of small gifts. The student brought small pencils imprinted with the slogan "Jesus [hearts] The Little Children," which the teacher confiscated because parents might perceive the message as being endorsed by the school. The Third Circuit held that First Amendment rights are not violated by restricting speech when a student "controverts the rules of a structured classroom activity with the intention of promoting an unsolicited message." *Walz*, 342 F.3d at 280. *Walz* also states that, "[i]n conventional elementary school activities, the age of the students bears an important inverse relationship to the degree and kind of control a school may exercise; as a general matter, the younger the students, the more control a school may exercise." *Id.* at 276. In our case, most of the children are pre-teens.

*Poling v. Murphy*, 872 F.2d 757 (6th Cir.1989), dealt with the plaintiff's student council candidacy speech which mocked one of the school's teachers. The school subsequently disqualified the student from the race. The Sixth Circuit held that there was "no doubt" that a student election and election assembly were school-sponsored where the school (1) scheduled the assembly during school-hours on school property, (2) made attendance compulsory, (3) determined the eligibility of prospective speakers, (4) provided the voting machines, and (5) "vetted [the candidates'] speeches in advance." The Court went on to interpret "reasonably related to a legitimate pedagogical concern" as describing a decision by an educator which was not "irrational."

In *Henerey ex rel. Henerey v. City of St. Charles, School Dist.*, 200 F.3d 1128 (8th Cir.1999), a high school student was disqualified as candidate for student body president following his unauthorized distribution of condoms attached to stickers bearing his campaign slogan. The Eighth Circuit held that because (1) the campaign was open only to enrolled students, (2) those who sought an elected position had to sign an agreement that they would obey school rules, and (3) all campaign materials had to be approved prior to their distribution or use, there was no evidence that the school intended by "policy or practice" to relinquish its control over the election and designate it a forum for public expression. Consequently, the election was deemed a nonpublic forum, and the school board's action was not unreasonable.

*Fleming v. Jefferson County School Dist. R–1*, 298 F.3d 918 (10th Cir.2002), involved a school-sponsored project to repair damage to Columbine High School after deadly shootings took place. Students were permitted to submit 4x4 inch tiles with abstract designs, so long as they did not invoke religious symbols, indicia of the Columbine attack such as ribbons or the names of victims, or obscene or offensive material. Plaintiffs whose tiles were rejected because they were inconsistent with those guidelines brought suit. The Tenth Circuit held that *Kuhlmeier* is not limited "to activities conducted as part of the school curriculum" as the district court held, but rather "activities that might reasonably be perceived to bear the imprimatur of the school and that involve pedagogical concerns."

█ In the case at bar, it seems clear that Mary August only had permission to put up any poster contingent on her status as a candidate for the seventh grade student council. If she were *not running in* this school-sponsored election, it is doubt-

ful she would have been permitted to put up any poster at all, much less the one at issue in this case. The Oxford Middle School elections are school-sponsored activities governed by *Kuhlmeier*. The Oxford Middle School hallways are not a public forum. Thus, the defendants' actions in removing the poster are constitutional provided they are "reasonably related to legitimate pedagogical concerns."

The Court is sympathetic to the plaintiffs' concern that allowing the School District to suppress Mary August's speech because of parental and/or student complaints amounts to a heckler's veto. However, the principle case cited by counsel on this topic, *Hedges v. Wauconda Community School District No. 118*, 9 F.3d 1295 (7th Cir.1993), deals with religious literature passed out by students to other students in school hallways prior to the start of classes. These facts are distinguishable from a situation in which religious iconography and language are placed on a school wall as part of a school-sponsored election.

Likewise, the remainder of the cases cited by counsel for the plaintiff appear to be part of a valiant but failed effort to induce the Court to consider this case under the *Tinker* standard rather than *Kuhlmeier*. This Court is sympathetic to the child's plight, and the Court will always zealously protect the First Amendment rights of students in *Tinker* situations. However, in this case, *Kuhlmeier* plainly controls. We are dealing with children in this case. It is likely the children of the Oxford Middle School would have handled these issues with admirable aplomb had not adults voiced their opinions. No surprise should entail when student candidates mimic adult tactics of injecting religious symbolism and appeals into the political process. Hopefully, the students (and adults) involved in this school sponsored exercise in the democratic process learn that tolerance and discretion have as much to do with functioning as a valued citizen in a pluralistic society as does who wins the campaign.

The Court finds that the defendants had a legitimate pedagogical interest in responding to complaints both by those who found the poster to be sacrilegious and by others who found it to be a violation of the Establishment Clause. The school authorities were seeking, unsuccessfully, to avoid litigation and possible disruption of educational processes. The decision by the superintendent to have the poster removed was not irrational under these facts. Mary August will suffer no irreparable harm if her request is denied. She is still on the ballot. She has other ways of promoting her campaign.

ACCORDINGLY, it is hereby ORDERED that the plaintiffs' request for temporary restraining order and injunctive relief is DENIED.