*414 OPINION OF THE COURT
SCIRICA, Circuit Judge.
In this civil rights action, plaintiff, a third grade elementary school student, sued her teachers, school principal and school board for damages under 42 U.S.C. § 1983 for allegedly preventing her from circulating a petition objecting to a planned third grade outing to the circus. The District Court granted summary judgment to defendants. We will affirm.
I.
Plaintiff Amanda Walker-Serrano was a nine-year-old third grade student at the Lackawanna Trail Elementary School. Walker-Serrano’s third grade class planned a voluntary field trip to the Shriner’s circus in Wilkes-Barre on April 7, 1999. Walker-Serrano did not approve of the voluntary outing because she believed the circus was cruel to animals. As a result, she prepared a handwritten petition stating, “We 3rd grade kids don’t want to go to the circus because they hurt animals. We want a better feild [sic] trip.” On February 4, Walker-Serrano brought the petition to the playground at recess, where she persuaded more than thirty of her classmates to sign it.
The following day, February 5, Walker-Serrano was at her classroom desk during a class period of silent reading and independent work. A few students gathered at Walker-Serrano’s desk. The classroom teacher, Elaine Mercanti, while breaking up the gathering, observed the petition on Walker-Serrano’s desk and told her to put it away.
Later that day, Walker-Serrano again brought her petition to the schoolyard at recess. Defendant Pat Carpenter, one of the teachers supervising recess, observed a group of students around Walker-Serrano near a patch of ice on the playground. Carpenter then noticed that one of the female students was crying — she had fallen on the ice and was bleeding. Carpenter observed Walker-Serrano with a pencil or pen and the petition in the middle of the students and fearing that a student might be injured by the pencil or pen, instructed Walker-Serrano to put the objects away. Walker-Serrano contends that Carpenter told her either “put it away” or “you can’t have that here.”[1]
Walker-Serrano was never punished for soliciting signatures for her petition or for possessing the petition. Furthermore, Walker-Serrano attended the Lackawanna School Board meeting on February 22, 1999 in order to express her opposition to the scheduled circus field trip.
On April 7, 1999, the third grade class attended the Shriner circus as planned. Walker-Serrano and her mother stood outside the circus and protested alleged cruelty to animals. Local media covered the protest.
The day prior, April 6, Walker-Serrano sought — and received — permission to pass out coloring books and stickers which dealt with cruelty to animals at the circus to her fellow students at school.
There was also some interplay between Walker-Serrano’s parents — Lisa Walker and Michael Serrano — and school officials. When Walker-Serrano returned home on February 5, she informed her mother that she was not permitted to circulate her petition. Mrs. Walker telephoned defendant Nancy Simon, principal of the Lacka-wanna Trail Elementary School, and de *415 fendant Donald Leonard, president of the school board.
Shortly thereafter, Lisa Walker and Michael Serrano retained an attorney, who sent the school district a letter raising concerns about possible violations of Walker-Serrano’s First Amendment rights. The district’s solicitor, Sandra Boyle, responded that no rights were violated because Walker-Serrano was not prevented from expressing her views on the circus; she was simply told to put the petition away when her “activities briefly disrupted classroom instruction and may have contributed to a situation where another child fell down during recess.” Boyle also expressed the view that “[ejlementary schools are not generally the environment for petition circulation.”
On February 22,1999, Walker-Serrano’s parents accompanied her to the school board meeting to raise their concerns about the handling of the petition. Walker-Serrano’s parents spoke, and the board and Principal Simon received copies of the petition, but no action was taken. Three days later, Solicitor Boyle sent a letter to Walker-Serrano’s attorney noting a school policy[2] that requires prior review of materials to be distributed by students.
Walker-Serrano’s counsel suggested that the presentation at the board meeting should satisfy the requirements of the policy and that, because the policy allows distribution after two days of inaction by the school, Walker-Serrano could circulate the petition. Boyle responded that the petition had not been properly “presented for review.” No request to circulate the petition was made after this time.
Walker-Serrano, by her parents, sued the president of the Lackawanna School Board, Donald Leonard; the superintendent of the school district, Clyde Ells-worth; Principal Nancy Simon; and teacher Pat Carpenter, all in their personal and official capacities. They seek damages from the defendants individually and from the school district for alleged violations of Walker-Serrano’s rights to freedom of speech and association, violations of her right to petition for redress of grievances, and also under several state constitutional and common law causes of action.
The District Court granted defendants’ motion for summary judgment, concluding Walker-Serrano’s First Amendment rights were not violated as a matter of law, and finding defendants entitled to qualified immunity. The District Court also concluded the school district — in the person of Donald Leonard in his official capacity — could not be liable, as it lacked sufficient involvement in the actions complained of. Plaintiff appealed.
II.
The public school environment presents special challenges for determining the extent of the First Amendment’s *416 protections. That the First Amendment protects student expression within schools is beyond challenge. See Tinker v. Des Moines Indep. Cmty. Sch. Disk, 393 U.S. 503, 506, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969) (“It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate.”). But the First Amendment has never been interpreted to interfere with the authority of schools to maintain an environment conducive to learning. The Supreme Court “has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.” Id. at 507, 89 S.Ct. 733. Accordingly, “conduct by the student, in class or out of it, which for any reason— whether it stems from time, place, or type of behavior—materially disrupts classwork or involves substantial disorder or invasion of the rights of others is, of course, not immunized by the constitutional guarantee of freedom of speech.”[3] Id. at 513, 89 S.Ct. 733.
This framework has generally been used to assess the constitutionality of restrictions on speech in high schools and middle schools. In those contexts, we have required that the school demonstrate a “well-founded expectation of disruption” or of interference with the rights of others, before upholding the restriction. Sypniewski v. Warren Hills Reg’l Bd. of Ed., 307 F.3d 243, 253 (3d Cir.2002); Saxe, 240 F.3d at 212.
But any analysis of the students’ rights to expression on the one hand, and of schools’ need to control behavior and foster an environment conducive to learning on the other, must necessarily take into account the age and maturity of the student. Fraser, 478 U.S. at 683-84, 106 S.Ct. 3159; Muller by Muller v. Jefferson Lighthouse Sch., 98 F.3d 1530, 1538 (7th Cir.1996) (“Age is a critical factor in student speech cases.... ”); Baxter by Baxter v. Vigo County Sch. Corp., 26 F.3d 728, 738 (7th Cir.1994) (“[A]ge is a relevant factor in assessing the extent of a student’s free speech rights in school.”). The significance of age in this inquiry has called into question the appropriateness of employing the Tinker framework to assess the constitutionality of restrictions on the expression of elementary school students. No other Court of Appeals[4] has ruled on the applicability of Tinker in this context. District courts engaging this issue have generally found that Tinker provides an appropriate mode of analysis of elementary school students’ First Amendment rights. Johnston-Loehner v. O’Brien, 859 F.Supp. 575 (M.D.Fla.1994) (distribution of religious literature); Jeglin ex rel. Jeglin v. San Jacinto Unified Sch. Dist., 827 F.Supp. 1459 (C.D.Cal.1993) (school dress code).
There can be little doubt that speech appropriate for eighteen-year-old high *417 school students is not necessarily acceptable for seven-year-old grammar school students. Human sexuality provides the most obvious example of age-sensitive matter, see Fraser, 478 U.S. at 688-84, 106 S.Ct. 3159, but there are any number of topics that are more appropriate for older students than younger ones. Cf. Peck v. Upshur County Bd. of Ed., 155 F.3d 274, 288 n. (4th Cir.1998) (holding that a policy permitting distribution by non-students of religious material constitutional in the high school setting, but unconstitutional in the elementary school setting because of “the impressionability of young elementary-age children”); Slotterback ex rel. Slotterback v. Interboro Sch. Dist, 766 F.Supp. 280, 296 (E.D.Pa.1991) (noting the “impressionability” of children at elementary school level is a factor in determining whether to uphold a school policy). Furthermore, as students approach adulthood, their ability to form and express their own views becomes increasingly important. Younger students are at a stage in which learning how to develop relationships and behave in society is as or even more important than their forming particular views on controversial topics. See Muller, 98 F.3d at 1538 (“The ‘marketplace of ideas,’ an important theme in the high school student expression cases, is a less appropriate description of an elementary school, where children are just beginning to acquire the means of expression.”) (opinion of Manion, J.). Instilling appropriate values is a primary goal for our public schools, one that is especially important in the earlier grades. Accordingly, young students demand a far greater level of guidance—guidance that is fundamental to our public schools’ mission.
That age is a crucial factor in this calculus does not necessary mean that third graders do not have First Amendment rights under Tinker. Tinker provides a flexible standard that arguably is able to incorporate these considerations. Tinker permits school regulation of student speech whenever the school can show that the speech would be disruptive, or would interfere with the rights of other students. In essence, Tinker requires that schools have a legitimate educational or disciplinary justification for regulating student expression. That elementary schools require a greater degree of control, or a different kind of control, over students might be accommodated within the Tinker analysis. At the very least, anything that interferes with the legitimate educational and disciplinary functions of elementary schools could be regulated under Tinker.
Supporting recognition of a qualified Tinker right is that elementary school students’ freedom of conscience has been constitutionally protected for decades. See, e.g., Ill. ex rel. McCollum v. Board of Ed., 383 U.S. 203, 68 S.Ct. 461, 92 L.Ed. 649 (1948) (religious education in public school grades four through nine unconstitutional); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) (right to teach foreign language to ten-year-old). For over fifty years, the law has protected elementary students’ rights to refrain from reciting the pledge of allegiance to our flag. W. Va. State Bd. of Ed. v. Barnette, 319 U.S. 624, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943). Punishing a child for non-disruptively expressing her opposition to recitation of the pledge would seem to be as offensive to the First Amendment as requiring its oration.
Nonetheless, at a certain point, a school child is so young that it might reasonably be presumed the First Amendment does not protect the kind of speech at issue here. Where that point falls is subject to reasonable debate.
In any event, if third graders enjoy rights under Tinker, those rights will necessarily be very limited. Elementary *418 school officials will undoubtedly be able to regulate much — perhaps most — of the speech that is protected in higher grades. When officials have a legitimate educational reason — whether grounded on the need to preserve order, to facilitate learning or social development, or to protect the interests of other students — they may ordinarily regulate public elementary school children’s speech.
Turning to this case, even if elementary school children are entitled to some protection under the First Amendment, it might be argued that, under Tinker, they have no right to seek signatures from their peers on a petition of the kind at issue here.
As a general matter, collecting petitions is a protected activity under the First Amendment. Meyer v. Grant, 486 U.S. 414, 421-22, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988). It involves an encounter in which the petitioner advocates a position, seeking to persuade the listener to sign on to the cause. In response, the signer expresses his support for the position expressed. The petition creates an environment that encourages speech of a kind central to the First Amendment’s concern. See id. (“[T]he circulation of a petition involves the type of interactive communication concerning political change that is appropriately described as ‘core political speech.’ ”).
Nonetheless, a school setting, especially an elementary school setting, may require a different application. As Judge Greenberg elucidates in his concurring opinion, implicit in petitioning activity is that the young listener is capable of comprehending the advocated position. Furthermore, whether or not the young petitioner is reflecting and acting on her parents’ views is relevant. When other legitimate factors are added to the mix, like the undoubtedly valid parental role and prerogatives with respect to other students, and the possibility of subtle coercion on the part of the petitioner, it is clear that school authorities must be given great leeway to regulate and restrict petitioning in elementary schools.
Yet while circulating petitions is clearly not always appropriate for elementary school students, we see no reason to conclude at this juncture that it never is. Plaintiff points out that one of Walker-Serrano’s textbooks contained a lesson in which the students are asked to circulate a petition on a matter of community concern. This confirms the common-sense assumption that, at least some of the time, elementary school students may be capable of circulating petitions in a manner consistent with educational goals, and that petitioning can be a significant learning experience for these children. But where signature gathering interferes with educational goals or interferes with the rights of other students, it can, of course, be restricted. In any event, we see no reason at this point to conclude that, as a general matter, these concerns cannot be addressed under the case-by-case approach specified in Tinker. Yet it bears noting that in an elementary school setting, the Tinker proscription against interfering with the rights of other young students is especially important.
III.
Regardless of the extent the Tinker analysis is properly employed in the elementary school context, the record here does not support a First Amendment violation claim. There is no evidence that defendants acted outside of the permissible scope of their authority over third grade students, even if Walker-Serrano’s petition caused no disruption.
Defendants contend they prevented Walker-Serrano from circulating the petition only when the petition appeared to *419 cause disruption under Tinker. That may be so. That they encouraged other expressions of Walker-Serrano’s opposition to the circus supports their view that their decisions were not based on animus to the position she expressed, but to the particular mode of expression in particular circumstances. Walker-Serrano contends her petition did not cause disruption either on the playground or in the classroom. She does not address whether her petition may have infringed on the rights of fellow students. But even if permitted, a school must be able to regulate the times and circumstances a petition may be circulated in order to fulfill its custodial and pedagogical roles. There can be no constitutional right, if any, to circulate a petition in an elementary school in class during a quiet reading period or on an icy playground.
It is undisputed that defendants did not discipline Walker-Serrano for circulating her petition, in which she collected over thirty signatures. Because Walker-Serrano and her parents never petitioned the school for permission to circulate the petition (even beyond the signatures already collected) we cannot know that she would not have been permitted to circulate the petition on other occasions.
But the school authorities did something more. They permitted Walker-Serrano to distribute other materials to her fellow classmates — coloring books and stickers— expressing her views about the circus’s alleged ill-treatment of animals. Whatever rights of expression Walker-Serrano may have possessed, her teachers, with insight and flexibility, more than accommodated them.
In sum, not only did Walker-Serrano collect over thirty signatures on her petition, she was never punished for this activity. Furthermore, the school authorities encouraged and permitted her to express her views in what they properly regarded as a pedagogically appropriate manner. As in Fraser, “[tjhere is no suggestion that school officials attempted to regulate [Walker-Serrano’s] speech because they disagreed with the views [she] sought to express. Nor does this case involve an attempt by school officials to ban written materials they consider ‘inappropriate’ for [elementary] school students, or to limit what students should hear, read, or learn about.” 478 U.S. at 689, 106 S.Ct. 3159 (Brennan J., concurring). Therefore, the record does not permit a finding that Walker-Serrano suffered an injury of constitutional dimension.
Whether or not similar interference with expression may result in a First Amendment violation in other contexts, the special responsibilities of elementary school educators, and our deference to the choices they make in operating schools, precludes elevating this dispute to the level of a constitutional violation. See Sypniewski, 307 F.3d at 260 (noting “leeway” granted public secondary and elementary schools). The number of everyday decisions that must be made with respect to the boundaries of acceptable behavior of third graders is so great that courts cannot second guess elementary school officials on every minor dispute involving third graders’ expression. To do so would be to turn the courts into the guardians of elementary school discipline, an area within “the comprehensive authority of the States and of school officials.” Tinker, 393 U.S. at 507, 89 S.Ct. 733. Absent punishment for expression, a significant pattern of concrete suppression, or some other form of clear suppression of the expression of elementary school students, a federal First Amendment action is not an appropriate forum for resolution of disputes over schools’ control of third graders’ conduct.
Because this record does not support Walker-Serrano’s contention that defendants violated her First Amendment *420 rights, we need not reach the questions of defendants’ qualified immunity or of School Board President Leonard’s liability in either his personal or official capacities.
Accordingly, we will affirm the judgment of the District Court.

. For reasons of safety, the elementary school maintains it had an unwritten policy — since codified — prohibiting writing implements on the playground. The parties dispute whether this was the reason for Carpenter’s action.

. The relevant portion of the Policy provides: "The Board respects the right of students to express themselves in word or symbol and to distribute materials as a part of that expression, but recognizes that the exercise of that right must be limited by the need to maintain an orderly school environment and to protect the rights of all members of the school community .... The Board shall require that students who wish to distribute materials submit them for prior review. Where the reviewer cannot show within two school days that the materials are unprotected, such material may be distributed. Appeal from prior review shall be permitted to the Superintendent and the Board in accordance with district rules.” This policy was developed pursuant to 22 Pa.Code, § 12.9(e), which provides, "School officials may require students to submit for prior approval a copy of materials to be displayed, posted or distributed on school property.” (applies to all Pennsylvania public school students).

. Even when not disruptive, a school may exercise control over speech that bears the imprimatur of the school, such as that in a school newspaper, Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 108 S.Ct. 562, 98 L.Ed.2d 592 (1988), or lewd or plainly offensive expression, Bethel Sch. Dist. No. 403 v. Fraser, 478 U.S. 675, 106 S.Ct. 3159, 92 L.Ed.2d 549 (1986). Neither party urges us to consider this case under either the Hazel-wood or Fraser analyses. Saxe v. State Coll. Area Sch. Dist., 240 F.3d 200, 214 (3d Cir. 2001) ("Speech falling outside of these categories is subject to Tinker’s general rule: it may be regulated only if it would substantially disrupt school operations or interfere with the rights of others.").

. This matter is discussed in Muller, 98 F.3d at 1535-39, 1545-47, but with varying views, none of which commanded a majority of the court.