885 A.2d 962

GIOVANNI S. LOPRESTI, ON BEHALF OF HIS DAUGHTER, GIAN-NA R. LOPRESTI, PLAINTIFF, v. GALLOWAY TOWNSHIP MIDDLE SCHOOL; JANET WILBRAHAM, ASSISTANT PRIN-CIPAL; ROBIN L. MOORE, PRINCIPAL; DOUG B. GROFF, SUPERINTENDENT, DEFENDANTS.

Superior Court of New Jersey
Law Division Atlantic County

Decided July 19, 2004.

Giovanni S. LoPresti, *pro se.*

*Mitchell S. Berman,* for defendants.

VALERIE H. ARMSTRONG, A.J.S.C.

## I.  BACKGROUND

On May 17, 2004, pursuant to the First and Fourteenth Amendments to the United States Constitution and 42 *U.S.C.* § 1983, Gioivanni S. LoPresti (LoPresti) filed a verified complaint on behalf of his daughter, Gianna, seeking an interlocutory and a permanent injunction enjoining enforcement of the Galloway Township Middle School Lunch Cafeteria Policy, Section (b), which compels all students to sit at their designated lunch tables and remain seated unless permission is granted otherwise.  In addition to injunctive relief, LoPresti seeks (a) a declaration by the court that the defendants violated Gianna's First and Fourteenth Amendment rights;  (b) an order requiring the removal and destruction of any disciplinary material pertinent to Gianna;  (c) an order requiring defendants to publicly display an announcement that Section (b) of the Cafeteria Policy is no longer enforceable; and (d) damages and costs of suit.  LoPresti has clarified that the only damages he seeks are litigation costs.  Defendants have responded to this litigation by way of a Motion seeking to dismiss the complaint for failure to state a claim upon which relief may be granted.

## II.  THE FACTS

The essential facts are undisputed.  At the time of the filing of the Complaint, Gianna was a seventh-grade student at the Galloway Township Middle School.  She will be entering the eighth grade in September 2004.

While the Galloway Township Middle School was named as a defendant in this matter, in reality, the true defendant is the Galloway Township School District since the Galloway Township Middle School (Middle School) is not a legal entity. The other defendants are Janet Wilbraham, Assistant Principal of the Middle School, Robin L. Moore, Principal of the Middle School, and Douglas B. Groff, Superintendent of the Galloway Township School District.

During the 2003–2004 school year, the Middle School consisted of 984 seventh-and eighth-grade students. The Middle School is one of nine schools which make up the Galloway Township School District.

The Middle School Cafeteria Policy states the following:

## CAFETERIA

In order to maintain an orderly atmosphere in the cafeteria, the following practices must be followed:

a.  There is to be a REASONABLE level of noise in the cafeteria.

b.  Students sit at their designated tables and remain seated, unless other permission is granted.

c.  No one is to leave the cafeteria without permission.

d.  No food is to be taken out of the cafeteria.

e.  Each student is required to leave the floor and table clean.

f.  There is to be no throwing of food or other objects.

Failure to comply with these guidelines results in disciplinary action, including assigned seats, cafeteria exclusion, school service time, or more serious consequences.

The Cafeteria Policy is included as part of a school "Agenda" which is distributed to all students and their parents/guardians at the commencement of each school year. When Gianna entered seventh grade, she and her stepmother signed an acknowledgment, indicating that they had reviewed the school Agenda and they understood the expectations, discipline code and dress code.

Sometime during May 2004, Gianna received three lunch detentions because she left her assigned table in the cafeteria to speak with her friends who were sitting at another table. Appended to

LoPresti's complaint is a May 12, 2004 e-mail message which he sent to defendants Moore and Groff, and Gianna's teacher. This e-mail message communicated the following:

I have instructed my daughter Gianna, not to comply with her present lunch detentions. You will not under any circumstance communicate with my daughter about this matter. It's one thing to regulate conduct in class, but I see no harm whatsoever for her to get up and sit with and/or communicate with her friends during lunch period. As I stated in the beginning of the year, this present school administration is infested with dictators. Granted, I have formerly apologized for my demeanor, but under no circumstances will I do the same for the present situation at hand.

Apparently, you have recruited yet another dictator (Ms. Wilbraham). Let me assure you and without question, I see constitutional issues at hand. Moreover, I have no problem in resolving these constitutional issues in federal court. You should note that me and my wife have personally supported the school in the past for instilling discipline upon our daughter. Basically, you are discriminating on the basis of thinking that all students are going to commit an act worthy of disciplinary action. This I find extremely unconstitutional.

Perhaps you are not aware that our Constitution provides that all people are by nature free and independent, and have certain natural and unalienable rights, among which are those of enjoying and defending life and liberty, of acquiring, possessing, and protecting property, and of pursuing and obtaining safety and happiness. I understand this school has a major problem with these rights, but I enjoy defending them. I would strongly suggest that you have your attorney contact me as quickly as possible. **Again, I will remind you not to communicate with my daughter concerning this matter.**

With kindest regards!...

On May 13, 2004, Moore responded to LoPresti by e-mail, suggesting a meeting with him, his wife, Gianna's teacher and Wilbraham to discuss the problems and resolve any issues. Several e-mails later, LoPresti advised he was taking the matter to court. His May 14, 2004 e-mail stated:

Once again, I have informed Gianna not to comply with your threats. Do whatever you have to do. If you wish to suspend her for none [sic] compliance, that is your call. She will not, comply with your detention.

Litigation will be filed Monday. My Complaint is done. I look forward in resolving your unconstitutional issues in Court. You have made my day.

At this point, any settlement is off. The Judge will be the final decision maker in this case.

The Middle School has four separate thirty-minute cafeteria periods during the course of a school day. The period during which Gianna is assigned to eat lunch includes 260 Middle School

students. The Middle School cafeteria is located on three tiers, each of which is at a different height. Superintendent Groff proffers at paragraph 7 of his Certification in support of the Motion to Dismiss that

> The safety of the students is of paramount importance. Requiring the students to remain at their assigned tables prevents excessive movement up and down the various tiers. Additionally, it permits the staff to ensure and monitor the orderly serving of lunches, by being able to direct different groups of tables to obtain their lunches in an organized fashion.

Students are assigned to a table which seats eight students, although the students are not assigned to a particular seat at the table. At the beginning of the school year, students are permitted to choose a specific table to which they will be assigned for the lunch period. LoPresti asserts that Gianna was unable to make a table selection this year because she had been absent from school due to illness.

Cafeteria table assignments can be, and have been, changed for good cause at the request of either a student or a teacher. Students have been given permission to visit other tables for good cause. A student violating the cafeteria seating policy will receive three "lunch detentions" which are not served after school or on Saturdays, but rather, are served by the student eating lunch in a separate room with a teacher/monitor. Groff certifies that other school districts within the state have similar cafeteria policies.

According to LoPresti, Gianna's behavior, which resulted in the issuance of the lunch detentions, resulted from a peaceful discussion with her peers at another cafeteria table to which she had not been assigned. There is nothing before the court to suggest that any discussion Gianna had with her friends at the other table was anything but peaceful.

### III. *LEGAL ANALYSIS*

LoPresti's application is grounded in his perception that "[t]he present cafeteria policy restricts peaceful communication, restricts movement, assembly, and is designed to punish students on the presumption that they are worthy of committing an act of disci-

plinary action." LoPresti argues that students should be punished for committing actual disciplinary infractions, and not for violating a policy which is based on a presumption that Middle School students will act out. Hence, he argues that Gianna's First and Fourteenth Amendment rights have been violated by the Middle School Cafeteria Policy.

LoPresti emphasizes that Gianna's violation of the Cafeteria Policy occurred "without any disruption" and that she merely engaged in "peaceful discussions" with her peers at another table. He asserts that the Middle School Cafeteria Policy is more restrictive than the policy at a local high school, and it is more restrictive than what the Galloway Township elementary students enjoy.

While citing many federal court decisions, LoPresti relies substantially on *Tinker v. Des Moines Independent Community School District*, 393 *U.S.* 503, 89 *S.Ct.* 733, 21 *L.Ed.*2d 731 (1969). In *Tinker*, school officials prohibited students from wearing black armbands on school facilities as a symbol of the students' disapproval of the hostilities in Vietnam Specifically, "[t]he school officials banned and sought to punish petitioners for a silent, passive expression of opinion, unaccompanied by any disorder or disturbance on the part of petitioners." *Id.* at 508, 89 *S.Ct.* 733. The United States Supreme Court held that the prohibition against the armbands and the suspension of the students wearing them, in the absence of any actual disturbance or disruption, was an unconstitutional denial of the students' right of expression of opinion.

The facts of *Tinker* are distinguishable from the instant case in that the students in *Tinker* were prohibited from expressing a particular opinion about the Vietnam war through the symbolic act of wearing black armbands. Section (b) of the Middle School Cafeteria Policy does not in any way limit the content of students' expression of speech during lunch. It does not prohibit the students from discussing particular topics or expressing their opinion as to any matter. It merely requires that

during the thirty-minute lunch session, students are to sit at a designated table, unless permission is granted otherwise. The policy does not regulate expressive or symbolic speech.

■ While the facts of *Tinker* are distinguishable in that *Tinker* involved "direct, primary First Amendment rights akin to 'pure speech,'" the principles espoused by the Supreme Court are certainly pertinent to this matter:

First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. This has been the unmistakable holding of this Court for almost 50 years.

[*Id.* at 506, 89 *S.Ct.* 733.]

The *Tinker* court also stated:

On the other hand, the Court has repeatedly emphasized the need for affirming the comprehensive authority of the States and of school officials, consistent with fundamental constitutional safeguards, to prescribe and control conduct in the schools.

[*Id.* at 507, 89 *S.Ct.* 733.]

In the matter of *Bethel School District No. 403 v. Fraser*, 478 *U.S.* 675, 106 *S.Ct.* 3159, 92 *L.Ed.2d* 549 (1986), which involved a student who was disciplined for language he used, Chief Justice Burger found Justice Black's dissenting opinion in *Tinker* to be particularly relevant:

"I wish therefore, ... to disclaim any purpose ... to hold that the Federal Constitution compels the teachers, parents, and elected school officials to surrender control of the American public school system to public school students." *Id.* at 686, 106 S.Ct. 3159 (quoting *Tinker, supra,* 393 *U.S.* at 526, 89 *S.Ct.* 733 (Black, J., dissenting)).

As noted by the defendants in decisions subsequent to *Tinker* the Supreme Court "developed an analytical framework to determine when and how to apply the standard laid out in *Tinker.* The first step in that analysis is to identify the nature of the forum in question, whether a traditional public forum, a limited public forum, or a non-public (closed) forum."

■ A detailed discussion of the forum issue is not necessary in the context of the instant case. Suffice it to say that in the

matter of *Hazelwood School District v. Kuhlmeier*, 484 *U.S.* 260, 267, 108 *S.Ct.* 562, 98 *L.Ed.*2d 592 (1987), unless school officials have opened school facilities for indiscriminate use of the public, a school is a non-public forum, pursuant to which "school officials may impose reasonable restrictions on the speech of students, teachers, and other members of the school community." There is nothing in the record before this court to even remotely suggest that the Galloway Township Middle School is used indiscriminately by the general public. Hence, it is deemed to be a non-public forum.

In *Epperson v. Arkansas*, 393 *U.S.* 97, 104, 89 *S.Ct.* 266, 21 *L.Ed.*2d 228 (1968), the Supreme Court stated that "[c]ourts do not and cannot intervene in the resolution of conflicts which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." In *Walker–Serrano v. Leonard*, 325 *F.*3d 412 (3d Cir.2003), and *S.G. v. Sayreville Board of Education*, 333 *F.*3d 417 (3d Cir.2003), the Third Circuit Court of Appeals, in rejecting constitutional challenges to school authority, emphasized the authority of school officials to control and set boundaries for conduct occurring within a school facility. Further, in *Walker–Serrano, supra*, 325 *F.*3d at 416, the Third Circuit recognized that a student's age and grade level are relevant to the amount of restriction reasonably placed on the conduct of students by school authorities. Hence, there are valid differences between restrictions placed on the conduct of primary school, middle school and high school students.

Turning now to resolution of the constitutional issue raised by LoPresti on behalf of Gianna, the court concludes that the complaint does not establish a violation of Gianna's First and Fourteenth Amendment rights. It is important to emphasize that this is not a close call.

Section (b) of the Cafeteria Policy does not limit what Gianna and her friends may say, hear or read while in the school cafeteria. There is no indication that any of the defendants regulated Gianna's speech because of disagreement with ideas

expressed by her. The Cafeteria Policy does not in any way limit expressive or symbolic speech in the cafeteria.

The Cafeteria Policy merely states that a student may not leave his or her assigned cafeteria table without permission to do so. Notably, the Cafeteria Policy leaves open the opportunity for a student to move about the cafeteria during the thirty-minute lunch period, if permission is sought and granted. School officials in implementing Section (b) of the Cafeteria Policy have done so with a perfectly rational basis, namely, to keep an orderly environment in the cafeteria and to move the students in and out of the lunch period in a thirty-minute time frame. If Gianna is permitted as an exercise of her First Amendment rights to freely wander about the cafeteria to visit friends other than those sitting at her assigned table, then taking the matter to its most logical extreme, so are the other 259 students sharing the same lunch period.

■ School lunch as part of the normal school day is subject to reasonable regulations and restrictions by school officials. Reasonable restrictions designed to maintain order in the cafeteria by limiting movement among students does not in any way violate the students' First Amendment rights. LoPresti's argument, that Gianna is being punished as the result of an unconstitutional policy which is based on a presumption that students are capable of committing disruptive conduct, ignores the reality of the democracy in which we live.

Many of the laws and regulations which govern our society have been enacted based upon the presumption that, without them, people will engage in conduct which is disorderly, disruptive and harmful. To suggest that school officials can not place reasonable restrictions upon students' movement throughout a school facility during the course of the school day whether in the hallways, the classroom, or the cafeteria, for the purpose of maintaining order *and* minimizing the opportunity for disruption, is a frightening prospect indeed. LoPresti's argument suggests that before school officials could rationally implement Section (b) which limits the movement of the students during the lunch period, disruptive and

perhaps harmful behavior would have to occur before such a policy could be adopted.

■ Public school students and their parents are entitled to expect that during the course of the school day, the students are being educated in a safe and orderly environment. As noted in *Walker–Serrano*, 325 *F*.3d at 420, "students are in the temporary custody of the school authorities who must protect them during the period of custody." It is the responsibility of school officials to use their common sense and experience in determining how best to maintain a safe and orderly environment.

Furthermore, one aspect of the public school educational process is learning that all of us, from the time we are children and throughout adulthood, are governed by various rules which we must obey. The fact that we may disagree with a rule does not necessarily render it "unconstitutional" and does not mean we have the right to simply disobey it.

■ The court is satisfied that Section (b) of the Middle School Cafeteria Policy was rationally enacted for the purpose of maintaining order and protecting the safety of the students. School officials need not wait for some highly disruptive behavior to occur before having a rational basis to effectuate such a policy.

The discipline imposed upon Gianna had absolutely nothing to do with anything she said to any of her fellow students during the lunch period but was due to her violating a policy which was rationally implemented by school officials within their discretion. Simply put, Section (b) of the Galloway Township Middle School Cafeteria Policy did not and does not violate Gianna's First and Fourteenth Amendment rights.

## IV. CONCLUSION

For all of the foregoing, the complaint is dismissed for failure to state a claim upon which relief may be granted. The dismissal is with prejudice.