REVISED DECEMBER 3, 2009
IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

December 1, 2009

Charles R. Fulbruge III
Clerk

No. 08-40707

DOUG MORGAN; ROBIN MORGAN; JIM SHELL; SUNNY SHELL;
SHERRIE VERSHER; CHRISTINE WADE,

        Plaintiffs - Appellants - Cross-
Appellees

v.

PLANO INDEPENDENT SCHOOL DISTRICT,

        Defendant - Appellee - Cross
Appellant

and

LYNN SWANSON, in her individual capacity and as Principal of Thomas
Elementary School; JACKIE BOMCHILL, in her individual capacity and as
Principal of Rasor Elementary School,

        Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Texas

Before KING, HIGGINBOTHAM, and CLEMENT, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is a First Amendment challenge to the facial validity of school rules for student distribution of written materials.

I

Four families with students in Plano Independent School District schools allege that over a three-year period students were not permitted to distribute various religious materials, including pencils inscribed with "Jesus is the reason for the season," candy canes with cards describing their Christian origin, tickets to a church's religious musical programs, and tickets to a dramatic Christian play, this by a policy then in effect and captured by a 2004 version of the District rules. While this suit was pending, the District adopted a new policy, referred to as the 2005 Policy. It permits distribution of materials during: (1) 30 minutes before and after school; (2) three annual parties; (3) recess; and (4) school hours, but only passively at designated tables. Students are generally prohibited from distributing material at all other times and places.[1] In addition, middle and secondary school students are permitted to distribute materials in the hallways during noninstructional time and in the cafeterias during noninstructional time and designated lunch periods. The 2005 Policy also contained narrow limitations on the content of materials that may be distributed.[2]

At a public hearing the school board heard testimony from various employees regarding its necessity. Following this hearing, the District "re-adopted" the 2005 Policy, adding a preamble detailing its justifications for

---

[1] The 2004 Policy was more restrictive, requiring any materials to first be submitted for prior review by the principal.

[2] The Policy bans materials that (1) are obscene, vulgar, or otherwise age-inappropriate; (2) endorse actions endangering the health or safety of students; (3) advocate violation of school rules; (4) advocate imminent lawlessness; (5) contain hate speech; and (6) reasonably could result in "material and substantial interference with any school education and/or curricular related activity or that block[] or impede[] the safe flow of traffic within hallways and entrance or exit ways of the school."

enacting it. The preamble states, in relevant part, that the Policy is "intended to decrease distractions, to decrease disruption, to increase the time available and dedicated to learning, and to improve the educational process, environment, safety and order at District schools and not invade or collide with the rights of others" and that the additional restrictions on elementary students are "intended to facilitate the safe, organized and structured movements of students between classes and at lunch, as well as to reduce littering."

II

With the new policy in effect, plaintiffs moved for a summary judgment that the policies are facially invalid. Accepting a magistrate judge's recommendation, the district court found the facial challenge to the 2004 Policy to be moot because no evidence suggested that the District would revert to a policy it had replaced with another. Turning to the facial validity of the 2005 Policy, the magistrate judge, relying on Canady v. Bossier Parish School Board,[3] applied the O'Brien test for content and viewpoint neutral restrictions, concluding that it was narrowly tailored to achieve the significant governmental interest of "improving the educational process,"[4] while leaving open ample alternative channels of communication. The district court adopted the magistrate judge's report and recommendation except as it related to the provision in the 2005 Policy prohibiting distribution of materials during elementary school lunch periods. The district court concluded that "this provision reaches more broadly than is reasonably necessary to protect [the District's] legitimate interests."

---

[3] 240 F.3d 437 (5th Cir. 2001) (applying to school uniforms the standard set forth in United States v. O'Brien, 391 U.S. 367 (1968)).

[4] Littlefield v. Forney Indep. Sch. Dist., 268 F.3d 275, 286 (5th Cir. 2001).

Plaintiffs here challenge the finding of mootness and the finding that the 2005 Policy is facially valid.[5]  The school district cross appeals the finding regarding the elementary school cafeteria policy.  We conclude that the 2005 Policy is facially constitutional and hold that the challenge to the facial validity of the 2004 Policy is not moot.  We will remand the claim of facial invalidity of the 2004 Policy so it can first be addressed by the district court with its resolution of the as-applied challenge to that policy, which is not before us.

Defendants Lynn Swanson and Jackie Bomchill, Principals at Thomas Elementary School and Rasor Elementary School, urge that the First Amendment does not apply to elementary school students.  They and their argument are not before us.  While this appeal was pending, the district court denied their separate motion to dismiss based on qualified immunity.  That appeal is proceeding.[6]

### III

We review a district court's judgment on cross motions for summary judgment de novo,[7] addressing each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.[8]  We

---

[5] The district court certified its judgment regarding the facial validity of both policies as final and appealable under Rule 54(b).  The court found the facial and as-applied challenges to be distinct claims and that the facial challenges posed distinct legal questions.  We acknowledge that there are different burdens attending an as-applied challenge, but note that regardless of our disposition of this matter, the plaintiffs will continue to litigate the constitutionality of the District's rules.  While deferring to the judgment of the district court, we remain dubitante over the efficiency of separating the claims into separate appeals, an effort further complicated by the later denial of qualified immunity to individual defendants. The effort to confect an efficient appeal is commendable in concept although here perverse in execution.

[6] Morgan v. Swanson, No. 09-40373 (5th Cir. appeal docketed Apr. 7, 2009).

[7] White Buffalo Ventures, LLC v. Univ. of Tex., 420 F.3d 366, 370 (5th Cir. 2005).

[8] Ford Motor Co. v. Tex. Dep't of Transp., 264 F.3d 493, 498 (5th Cir. 2001).

will affirm only if there is no genuine issue of material fact and the party is entitled to prevail as a matter of law.[9]

## IV

The district court found the 2005 Policy to be facially valid under United States v. O'Brien,[10] rejecting plaintiffs' contention that the case is controlled by the standard of Tinker v. Des Moines Independent School District—that restrictions be "necessary to avoid material and substantial interference with schoolwork or discipline."[11]

We have made plain that "time, place, and manner" is the proper standard for evaluating content and viewpoint neutral regulations of student speech[12] and that when a school imposes content or viewpoint based restrictions the court will apply Tinker.[13]  In Canady v. Bossier Parish School Board, we reaffirmed that there were four (arguably now five after Morse) categories of student speech and that "the level of scrutiny applied to regulations of student expression depends on the substance of the message, purpose of the regulation, and the manner in which the message is conveyed."[14]  The first four categories are various content

---

[9] Shaw Constructors v. ICF Kaiser Eng'rs, Inc., 395 F.3d 533, 539 (5th Cir. 2004).

[10] 391 U.S. at 367.

[11] 393 U.S. 503, 511 (1969).

[12] Palmer v. Waxahachie Indep. Sch. Dist., 579 F.3d 502, 507-09 (5th Cir. 2009); Canady v. Bossier Parish Sch. Bd., 240 F.3d 437, 442-43 (applying the O'Brien standard and noting that it was "virtually the same standard[]" as the traditional time, place, and manner analysis).

[13] Id.

[14] Id. at 441–42.

based designations drawn from the Tinker line,[15] making essentially the same inquiry: whether, "in light of the special characteristics of the school environment,"[16] the school may impose content or viewpoint based regulations on student speech. The last category of restrictions, the one at issue in Canady, includes those that are content and viewpoint neutral.[17]

Canady viewed O'Brien as an application of the time, place, and manner standard.[18] The Supreme Court has recognized their virtual equivalence.[19] By this measure, a regulation must be content and viewpoint neutral, and must be "narrowly tailored to serve a significant government interest, and . . . leave open ample alternative channels for communication of the information."[20] The regulation need not be the least restrictive alternative, but it must avoid burdening substantially more speech than is necessary to achieve the government's interest.[21]

---

[15] Tinker, 393 U.S. at 503; Bethel School Dist. No. 403 v. Fraser, 478 U.S. 675 (1986) (holding schools may prohibit lewd, vulgar, obscene or plainly offensive student speech); Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260, 273 (1988) (holding schools could regulate school sponsored speech such as student publications if "their actions are reasonably related to legitimate pedagogical concerns"); Morse v. Frederick, 551 U.S. 393, 422 (2007) (Alito, J., concurring) (holding that schools may regulate speech "that a reasonable observer would interpret as advocating illegal drug use" and that could not be "interpreted as commenting on any political or social issue").

[16] Tinker, 393 U.S. at 506.

[17] Canady, 240 F.3d at 442-43. We recently reiterated the applicability of this standard to content and viewpoint neutral restrictions in Palmer. 579 F.3d at 507-509.

[18] Id. (citing Clark v. Community for Creative Non-Violence, 468 U.S. 288, 298 (1984)).

[19] Clark, 468 U.S. at 298 (stating that the test in O'Brien "in the last analysis is little, if any, different from the standard applied to time, place or manner, restrictions"); Ward v. Rock Against Racism, 491 U.S. 781, 798 (1989) (reaffirming Clark).

[20] Ward, 491 U.S. at 791; see also Hill v. Colorado, 530 U.S. 703, 725-26 (2000); Heffron v. Int'l Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 647-48 (1981).

[21] Ward, 491 U.S. at 790-91.

Plaintiffs argue that the O'Brien standard only applies to expressive conduct and not to "pure speech"; that because distributing written materials is "pure speech," the Tinker "substantial disruption" test must apply. We are unpersuaded that the O'Brien standard, or a nigh-equivalent time, place, and manner standard, is so limited. The Supreme Court has twice applied the test we apply here to leafleting or distribution of written materials. In Heffron v. International Society for Krishna Consciousness, Inc., the Court upheld a regulation preventing Hare Krishnas from distributing their literature at a state fair outside of specifically assigned booths.[22] The Court found that the state interest in orderly movements of the crowd was significant and that the regulation was narrowly tailored to meet that end. Likewise, in Hill v. Colorado, in evaluating a restriction on the distribution of handbills (as well as making oral statements and displaying placards) near health care facilities, the Court asked whether the restrictions were "narrowly tailored to serve a significant government interest" and found them valid.[23] Both of these cases address regulation of what is urged here to be "pure speech." As we understand it, the logic of the argument would confine the time, place, and manner standard to regulations of "quintessential public forums" such as sidewalks;[24] requiring the state to clear the higher burden of a "substantial disruption" when regulating students. We must disagree. Tinker is triggered by content or viewpoint regulation. That "pure speech" is being regulated is here of no moment.

---

[22] 452 U.S. at 654.

[23] Hill, 530 U.S. at 710 & 713 n.19.

[24] Id. at 715.

Morse v. Frederick is not contrary. Nor did Justice Alito's[25] observation that he did not understand the majority opinion "to mean that there are necessarily any grounds for such regulation that are not already recognized in the holdings of this court" mean that regulations of student speech could only be upheld if they met the strictures of Tinker, Fraser, Hazelwood, or Morse and that no other First Amendment doctrine would apply. That contention cannot survive a plain reading. Its thrust is to cabin justifications of content or viewpoint based restrictions, reminding that reciting the mantra of a school's "educational mission" is insufficient. Morse did not involve, and Justice Alito's writing did not address, content or viewpoint neutral restrictions.[26] The statement that "any argument for altering the usual free speech rules in the public schools . . . [must] be based on some special characteristic of the school setting" implicitly recognizes that the generally applicable free speech rules (such as the allowance of time, place, and manner restrictions) continue to apply.

V

Applying the time, place, and manner test, we conclude that the District's 2005 Policy is reasonable and facially constitutional: the regulations at issue are content neutral[27] and the District has a significant legitimate interest that is furthered by the regulations. The regulations are aimed at providing a focused learning environment for its students.[28] The regulation of speech during and

---

[25] We have held Justice Alito's concurrence to be the controlling opinion in Morse. Ponce v. Socorro Indep. Sch. Dist., 508 F.3d 765, 768 (5th Cir. 2007).

[26] Palmer v. Waxahachie Indep. Sch. Dist., 579 F.3d 502, 508 (5th Cir. 2009) ("Morse . . . did not concern content-neutral regulations.")

[27] The content based restrictions are not at issue in this appeal.

[28] See Canady, 240 F.3d at 443 ("Improving the educational process is undoubtedly an important interest of [the school board].").

immediately before the classroom instructional period is intended to facilitate the beginning of class without a wait for the distribution of materials. Similarly, restrictions on distribution of materials by elementary students in hallways and the cafeteria are intended to facilitate the movements of students between classes and at lunch and to reduce littering. We have here more than invocations of an abstract educational mission. The District's rationales were supported by an affidavit of the deputy superintendent and testimony by teachers at the 2005 hearing that these are a positive response to the types of incidents causing disruption in the past.[29]

Less clear is whether the District's policy is narrowly tailored to meet the District's interest and whether there are ample alternative channels of communication. While upholding most of the policy, the district court found the prohibition on distribution of materials in the elementary school cafeteria to be unreasonable—an inapt targeting of its objectives. We conclude that the policies as written are sufficiently narrowly tailored and are constitutional, at least on our invocation of "avoidance." Steering clear of constitutional shoal water, we read the term "distribution" to mean distribution of multiple items to multiple individuals and accept the District's further narrowing that it would not in any event reach the passing of a single note or book so long as it is not during time set aside for classroom instruction.[30]

The policies provide ample alternative channels of communication. All students may distribute materials before and after school, during recess and

---

[29] For instance, one teacher testified that the first few moments of class often determine the success of the rest of class. Preventing distractions in the moments before instructional periods begin is important to ensuring that the instructional periods begin and run smoothly.

[30] "In evaluating a facial challenge to state law, a federal court must . . . consider any limiting construction that a state court or enforcement agency has proffered." Ward, 491 U.S. at 796 (quoting Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n.5 (1982)); Grayned v. City of Rockford, 408 U.S. 104, 110 (1972).

passively during school hours at designated tables. Moreover, middle school and secondary school students are permitted to distribute materials in the hallways and in the cafeterias during noninstructional time. While this freedom for the upper level students is not extended to distribution of materials within the classroom before instruction begins, the least restrictive regulation is not required. These are ample alternative channels of communication.

We turn to the claim that the restrictions on distribution by elementary school students in the cafeteria are invalid.[31] The District presented evidence that elementary school lunchrooms are heavily controlled yet near chaotic places where school administrators struggle to ensure that young students are able to take lunch in a limited period of time, and that elementary school students are not as mature and require more guidance than older students in order to ensure that they are able to move through the cafeteria quickly and efficiently.

As for impermissibly reducing alternative channels of communication, just like middle and secondary school students, elementary school students may still distribute written material before and after school as well as at recess. A student has several opportunities to distribute materials throughout the day. The alternatives for communication are fulsome. This time, place, and manner regulation serves the powerful interests of the school in maintaining order and discipline, essential both to its duty to teach and the protected freedom of its students to speak. So construed, the very balance simultaneously teaches and protects the student. We find that the 2005 Policy is facially constitutional.

VI

---

[31] We do not reach the question whether similar restrictions would be acceptable if imposed on middle or secondary school students. As a matter of common sense, as students become older and more self-sufficient the need for restrictions lessens.

The district court, accepting the magistrate's recommendation, found that, as the District was unlikely to return to the 2004 Policy, the request for injunctive and declaratory relief was moot. This is sound but it leaves aside plaintiffs' claim of nominal damages from the 2004 Policy. This court and others have consistently held that a claim for nominal damages avoids mootness.[32] Given that the plaintiffs will pursue their as-applied claim regardless of whether the 2004 Policy is found to be facially constitutional, we decline to address its merits without prior examination by the district court. We therefore remand all claims addressing the 2004 Policy to the district court for further proceedings.[33]

The district court's judgment is AFFIRMED in part and REVERSED in part.

---

[32] See Ward v. Santa Fe Indep. Sch. Dist., 393 F.3d 599, 601-603 (5th Cir. 2004) (recognizing Ward v. Santa Fe Indep. Sch. Dist., 35 F. App'x 386 (5th Cir. 2002) (per curiam) (reversing earlier judgment that claim for nominal damages did not avoid mootness and holding that a claim for nominal damages was sufficient)); see also Carey v. Piphus, 435 U.S. 247 (1978) (holding a plaintiff could seek nominal damages in the absence of other damages for an alleged constitutional violation under § 1983); Green v. McKaskle, 788 F.2d 1116 (5th Cir. 1986) (same); 13C CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 3533.3 (3d ed. 1998) ("A valid claim for nominal damages should avoid mootness."). This view is supported by our sister circuits. See Van Wie v. Pataki, 267 F.3d 109, 115 n.4 (2d Cir. 2001) (holding a claim for nominal damages avoids mootness); Doe v. Delie, 257 F.3d 309, 314 (3d. Cir. 2001) (same); Henson v. Honor Comm. of Univ. of Va., 719 F.2d 69, 72 n.5 (4th Cir. 1983) (same); Murray v. Bd. of Trs., Univ. of Louisville, 659 F.2d 77, 79 (6th Cir. 1981) (same); Bernhardt v. County of L.A., 279 F.3d 862, 871 (9th Cir. 2002) (same); Utah Animal Rights Coalition v. Salt Lake City Co., 371 F.3d 1248 (10th Cir. 2004) (same). However, this rule has been challenged as "inconsistent with fundamental principles of justiciability." See Utah Animal Rights Coalition, 371 F.3d at 1263 (2004) (McConnell, J., concurring).

[33] We note that to the extent that the only remaining relief the plaintiffs seek are nominal damages, a judgment awarding nominal damages would settle the matter, see Santa Fe Indep. Sch. Dist., 393 F.3d at 603, and doing so would not necessarily make plaintiffs prevailing parties entitled to attorney's fees. See Buckhannon Bd. and Care Home v. W. Va. Dept. of Health and Human Servs., 532 U.S. 598, 604 n.6 (2001) (citing Farrar v. Hobby, 506 U.S. 103, 115-116 (1992)).