# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 29, 2010

No. 09-40373

Lyle W. Cayce
Clerk

DOUG MORGAN; ROBIN MORGAN; JIM SHELL; SUNNY SHELL; SHERRIE VERSHER; CHRISTINE WADE,

Plaintiffs - Appellees,

v.

LYNN SWANSON, In Her Individual Capacity and as Principal of Thomas Elementary School; JACKIE BOMCHILL, In Her Individual Capacity and as Principal of Rasor Elementary School,

Defendants - Appellants.

Appeal from the United States District Court
for the Eastern District of Texas

Before DeMOSS, ELROD, and HAYNES, Circuit Judges.

JENNIFER WALKER ELROD, Circuit Judge:

We WITHDRAW our previous opinion in this matter and substitute the following.

This appeal arises from the district court's denial of Lynn Swanson and Jackie Bomchill's (Appellants) Second Motion to Dismiss based on qualified immunity. Appellants argue, as they did below, that the First Amendment does not apply to elementary school students. Because it has been clear for over half a century that the First Amendment protects elementary school students from religious-viewpoint discrimination, we AFFIRM.

No. 09-40373

## I.

Appellees allege that "[Appellants] have in the past, and continue in the present, to ban the distribution of religious messages by [Appellees] and other students while on school property," thereby resulting in "religious viewpoint discrimination in violation of clearly established law." Appellants deny that they discriminated against Appellees on the basis of viewpoint; however, because the motion on appeal is a Rule 12(b)(6) motion, the court must, for purposes of this review, accept the factual allegations contained in Plaintiffs' Second Amended Original Complaint as true.[1]  Set forth below are the allegations contained in the Appellees' 118-page complaint.

## A.

Each elementary school classroom in Plano Independent School District (Plano ISD)[2] hosts a "winter break" party at which students, if they so choose, may exchange "goodie bags" containing gifts.  At the December 2001 winter break party at Thomas Elementary School, Michaela Wade gave each of her classmates a goodie bag containing, among other items, a pencil inscribed with the phrase "Jesus is the Reason for the Season."  Each gift bag was sealed and had a sticker affixed to it which addressed the bag to a specific student in Michaela's class.  Before allowing her to distribute the goodie bags containing the pencils, the school officials searched her gift bags in order to determine

---

[1] In their motion to dismiss, Swanson and Bomchill conceded, as they must, that "the [c]ourt must accept the allegations contained in Plaintiffs' Second Amended Original Complaint that Defendants practiced viewpoint discrimination against Plaintiffs' religious speech."  In reviewing a 12(b)(6) motion, this court must accept as true all well-pleaded facts, "viewing the allegations of the complaint in a light most favorable to the nonmoving party." *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  We note, however, that at oral argument, Appellants vociferously contested the facts giving rise to this lawsuit.

[2] Although Plano ISD was a party in a related appeal before this court, it is not a party to this appeal.  *See Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740 (5th Cir. 2009), *cert. denied*, 2010 WL 1004558 (2010).

2

whether they contained any "religious" material.  Upon discovering the pencils, Plano ISD officials confiscated and banned them from school property.

Swanson, the principal at Thomas Elementary School, called Michaela's mother, Christine Wade, to inform her of the school's action and to explain that the candy canes that were also in Michaela's goodie bags were acceptable gifts but the pencils were unacceptable because they were inscribed with a religious message.  Swanson informed Christine Wade that Plano ISD administrators specifically instructed her that the school district would not allow Michaela to pass out pencils with the phrase "Jesus is the Reason for the Season" affixed to them because of the religious viewpoint of the gift.  At the 2001 winter break party, school officials permitted Michaela to hand out candy canes without a religious message attached and permitted her classmates to pass out goodie bags containing gifts inscribed with secular phrases and symbols, such as snowmen and snowflakes.  Neither Michaela nor her younger sister Bailey attempted to distribute gifts at their respective winter break parties  in subsequent years because they believed that Swanson (and Plano ISD) would continue to prohibit their distribution of religious materials.[3]

**B.**

Plano ISD, Swanson, and other school officials at Thomas Elementary School also prevented students from passing out "religious" materials at December 2003 winter break parties.  For his December 2003 winter break party, third-grader Jonathan Morgan chose to give his classmates goodie bags containing candy-cane-shaped pens along with a laminated card entitled the

---

[3] Appellees' Second Amended Original Complaint also alleges that school officials and Plano ISD banned all references to and symbols of the Christian religion and the celebration of the Christian religious holiday, Christmas, from Thomas Elementary School. R. 1566. This ban included red and green Christmas colors. *Id*. at 1568.  Bailey Wade was also instructed not to write "Merry Christmas" on greeting cards sent to United States  soldiers because that phrase might be offensive. *Id*.

No. 09-40373

"Legend of the Candy Cane" that explained the Christian origin of candy canes. Each bag was individually addressed to a specific classmate with a tag specifying that the gift was from Jonathan Morgan.

Several weeks before the winter break party, Jonathan's parents, Doug Morgan and Robin Morgan, met with Swanson in order to determine whether she would permit students to exchange gifts bearing "religious" messages. The Morgans discussed with Swanson how

> students and parents are being interrogated by school officials at the 'winter break' parties as to whether or not the contents of their gift or 'goodie' bags—which they have brought to school to distribute to their classmates during the 'winter break' party—contain any religious viewpoint, religious references or religious message and if the students or their parents acknowledged that the gift bags do contain religious messages or religious viewpoint materials, the bags are then confiscated by school officials and are banned from the classroom and prohibited from being distributed by the students while they are on school property. Swanson affirmed that those actions of school officials have occurred in the past and will occur in the future.

Swanson further emphasized that students were forbidden from using the term "Christmas" in conjunction with any school event or activity (including writing "Merry Christmas" on greeting cards sent to retirement homes) and affirmed that the school would permit secular gifts to be distributed between students at the winter break parties but would prohibit religious-viewpoint messages and gifts of a religious nature.

On the day of the party, Jonathan and his father unsuccessfully attempted to meet with Swanson and then proceeded to Jonathan's classroom. Jonathan's teacher met them at the door and prevented Jonathan from bringing his goodie bags into the classroom to exchange with his classmates because they contained "religious" messages. Once Swanson arrived at Jonathan's classroom and was apprised of the situation, she immediately informed the Morgans that Jonathan

4

No. 09-40373

could place his goodie bags in the school library or he could distribute his gift bags on a public sidewalk off of school property. All of Jonathan's other classmates were allowed to exchange gift bags inside the classroom.[4] Swanson only prohibited students from exchanging materials that contained a "religious" viewpoint. Swanson allowed students to exchange other materials,[5] and, other than noting the "religious" nature of the materials, Swanson offered no other justification for her censorship of Jonathan's speech.

## C.

In January 2004, "[w]hile at school, but during non-curriculum times and with no material and substantial disruption to the operations of the school," Stephanie Versher spoke with her friends about a Christian drama and gave free tickets to those who were interested in attending. After Stephanie had distributed several tickets, Bomchill, the principal of Rasor Elementary School, another Plano ISD school, instructed Stephanie's teacher to stop her from distributing additional tickets and to confiscate and discard tickets that she had distributed. Bomchill's only justification for restricting Stephanie's distribution of the tickets was that the tickets expressed a "religious" viewpoint and that other students might "disagree" with the Christian viewpoint and complain to school officials.

## D.

Plano ISD permits students to celebrate their birthdays with parties at school. Students with summer birthdays may celebrate their half-birthdays during the school year with their classmates while at school. Celebrants often

---

[4] Swanson later announced to the entire school that students were not allowed to bring any outside materials into the classrooms. Swanson, however, had just observed other outside materials inside of Jonathan's classroom, but she never required the other students to remove their gift bags from the classroom and place them in the library.

[5] Doug Morgan also asked Swanson if he could distribute the Legend of the Candy Cane cards to other parents present at the party. Swanson refused his request.

distribute snacks and small gifts to their classmates. For example, students have distributed bookmarks with printed messages, key rings with words and symbols, bracelets, and pencils with various words and symbols. The parties are celebrated during "non-curriculum times" at school—"primarily at the end of the lunch period or during a snack break between instructional time."

For her half-birthday party, on January 16, 2004, Stephanie wanted to give her classmates brownies along with two pencils: one inscribed with the word "moon" and another inscribed with the phrase "Jesus loves me this I know for the Bible tells me so." Stephanie's mother, Sherrie Versher, unsuccessfully attempted to meet with Principal Bomchill prior to the party to discuss the snacks and gifts, so on the day of the party, she took the pencils and brownies to the school's office and requested to see Bomchill. Upon arriving, Sherrie Versher received a letter accusing her of distributing material to students on school property and threatening that "law enforcement officials" would be called to arrest her.[6] Bomchill also accused Sherrie Versher of distributing religious-viewpoint materials to students at school.

Furthermore, Bomchill threatened that, if Stephanie distributed any more religious-viewpoint material while on school property, the school would call the police and Stephanie "would be in trouble." Bomchill allowed Stephanie to distribute the brownies and the "moon" pencils but not the "Jesus" pencils. According to Bomchill, such "religious" material (i.e., the tickets and "Jesus" pencils) can only be distributed "outside of the school building." Accordingly, Stephanie's mother removed the "Jesus" pencils from the tie wrapping the brownies and brought the brownies and "moon" pencils to Stephanie so that she

---

[6] The school's security guard followed Sherrie Versher as she went throughout the building, and upon leaving the school, Sherrie Versher noticed that two police cars were driving toward the school. As she was driving away, the police followed her and pulled her over. The officers let her go without incident.

could give them to her classmates during her half-birthday party in the school cafeteria during lunch break.

### E.

When Sherrie Versher arrived in the afternoon to pick Stephanie up from school, she observed her daughter "amongst a small group of her classmates outside of the school building on the sidewalk and lawn" giving the "Jesus" pencils to her friends after school. As Stephanie was attempting to give a pencil to one of her close friends, Bomchill grabbed her by the shoulder, took the pencil away from Stephanie's friend, and told Stephanie that "she could not distribute those Christian pencils—the religious viewpoint 'Jesus' pencils—while on [Plano ISD] school property." Bomchill then approached Sherrie Versher and informed her that Stephanie would be "kicked out of school" if she tries to distribute the Christian tickets or "Jesus" pencils at any time while on school property. When Sherrie Versher attempted to explain that Bomchill had earlier that day told her that Stephanie could distribute her materials "outside the building," Bomchill stated that Sherrie Versher "apparently had a hearing problem and needed to have it checked."

### II.

This court has jurisdiction to review the district court's denial of Appellants' motion to dismiss based on qualified immunity under 28 U.S.C. § 1291 and the collateral-order doctrine, but only to the extent that the appeal turns on questions of law. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). This court does not have jurisdiction to resolve factual disputes. *Roe v. Texas Dep't of Protective and Regulatory Servs.*, 299 F.3d 395, 400 (5th Cir. 2002). Moreover, this court reviews a district court's determination of a Rule 12(b)(6) motion *de novo. In re S. Scrap Material Co., LLC*, 541 F.3d 584, 587 (5th Cir. 2008). For a complaint to be dismissed for failure to state a claim, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the

assumption that all the allegations in the complaint are true (even if doubtful in fact)" and the non-moving party must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).[7]

Here, Appellants' motion to dismiss before the district court is based on a claim of qualified immunity, which the Supreme Court has held "is an immunity from suit rather than a mere defense to liability." *Mitchell*, 472 U.S. at 526. Where the defense is raised in a 12(b)(6) motion, "a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery," unless the plaintiffs sufficiently allege a violation of established law. *Id.*

## III.

Qualified immunity does not provide officials with a license to engage in lawless conduct. *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982). Rather, "[w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." *Id.* (footnote omitted). Qualified immunity thus shields government officials performing discretionary functions from individual liability for civil damages but only "insofar as their conduct does not violate clearly established rights of which a reasonable person would have known." *Id.* at 818; *Thompson v. Upshur County*, 245 F.3d 447, 456 (5th Cir. 2001). The Supreme Court has outlined a

---

[7] We will not consider Appellants' argument, raised for the first time during oral argument, that the facts asserted in the complaint—particularly that the events at issue were non-curricular—are implausible and therefore the complaint fails to meet the *Twombly* standard. "No authority need be cited for the rule that, generally, we do not consider an issue first raised at oral argument on appeal." *Arsement v. Spinnaker Exploration Co., LLC*, 400 F.3d 238, 247 (5th Cir. 2005). Moreover, even if we did consider the argument, which we do not, Appellees' complaint, which sets forth a detailed and thorough 467-point recitation of the alleged events, meets the *Twombly* standard. It is certainly plausible, for instance, that winter break and half-birthday parties could be what they purport to be—non-curricular parties.

two-prong test for determining whether an official is entitled to qualified immunity: (1) "The first inquiry must be whether a constitutional right would have been violated on the facts alleged," *Saucier v. Katz*, 533 U.S. 194, 200 (2001), *overruled in part on other grounds by Pearson v. Callahan*, 129 S. Ct. 808 (2009); and (2) "if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of the defendant's alleged misconduct," *Pearson v. Callahan*, 129 S. Ct. at 816.[8]

Appellants argued before the district court that (1) "the United States Constitution does not prohibit viewpoint discrimination against religious speech in elementary schools" and (2) Appellees' claims "should be dismissed because [Appellees] have failed to allege any conduct of these [Appellants] which constitutes a violation of [Appellees'] clearly established constitutional rights." The district court adopted the magistrate judge's report denying Appellants' Motion to Dismiss, which correctly found that "a child's right to freedom of expression is not forfeited simply because of her age," and that this right is clearly established in light of "the specific context of the case." Appellants allege that the district court erred in denying the motion to dismiss based on qualified immunity because "[t]he First Amendment is not implicated by

---

[8] In *Pearson*, the Supreme Court relaxed *Saucier*'s rigid requirement that a determination of "whether 'the facts alleged show the officer's conduct violated a constitutional right . . . *must* be the initial inquiry' in every qualified immunity case." *Pearson*, 129 S. Ct. at 816 (quoting *Saucier*, 533 U.S. at 201). Appellants thus argue that it is necessary only for this court to determine whether Appellees' alleged constitutional right was clearly established and that this court need not determine whether Appellees have actually asserted a violation of a constitutional right. In order to deny a claim of qualified immunity, however, this court, under *Harlow*, must determine whether Appellants' alleged conduct actually violated Appellees' constitutional rights. *Pearson*, therefore, did not abolish the first prong of the qualified-immunity test but rather created a short-cut for courts to grant qualified immunity without undertaking the often more difficult task of determining whether a plaintiff's alleged conduct resulted in a constitutional violation. *Harlow*, 457 U.S. at 818-19. Accordingly, we will analyze both prongs in turn.

No. 09-40373

restrictions on student-to-student distribution of non-curricular materials by elementary school students to their classmates."[9]  In the alternative, Appellants allege that the law did not clearly establish that the First Amendment Free Speech Clause is implicated under the alleged circumstances of this case because neither "this [c]ourt nor the Supreme Court has ever upheld a First Amendment free speech claim by an elementary school student."

## IV.

The issues before this court are straightforward and limited.  This court is not tasked with determining whether Appellants actually engaged in religious-viewpoint discrimination because at this juncture, we must accept Appellees' factual allegations that Appellants discriminated against religious viewpoints.  Nor is this court tasked with drawing the line at which student speech may be properly censored because of its potential to disrupt the classroom, *see Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969), or because of its potential to subvert the school's educational mission, *see Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260 (1988).  Because Appellants asserted qualified immunity in a motion to dismiss, this court must accept as true Appellees' factual allegations, and accordingly, we conclude that their actions, as alleged, did not cause substantial and material disruption of school operations.  *Tinker*, 393 U.S. at 509.  Furthermore, the facts alleged, viewed in a light most favorable to Appellees, provide no indication that the events at issue were curricular or that the speech was inconsistent with the school's "basic educational mission."  *Hazelwood*, 484 U.S. at 266 (internal quotations and citation omitted).  In fact, some of the alleged speech at issue occurred after

---

[9]  This court has previously recognized this broad characterization of Appellants' argument in a related case.  *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 744 (5th Cir. 2009) ("Defendants Lynn Swanson and Jackie Bomchill, Principals at Thomas Elementary School and Rasor Elementary School, urge that the First Amendment does not apply to elementary school students."), *cert. denied*, 2010 WL 1004558 (2010).

school hours. Therefore, we need only determine, under the facts pleaded here, whether it was clearly established at the time of the alleged misconduct that elementary school students have a First Amendment right to be free from religious-viewpoint discrimination while at school.[10]

## A.

Appellants contend that "neither the Supreme Court nor this Court has ever extended First Amendment 'freedom of speech' protection to the distribution of non-curricular materials in public elementary schools." They are wrong. The Supreme Court has long recognized that public school students do not "shed their constitutional rights to freedom of speech or expression at the schoolhouse gate." *Tinker*, 393 U.S. at 506. Furthermore, for 67 years, the Supreme Court has recognized that school officials are subject to the Constitution, and the Free Speech Clause of the First Amendment is no exception. "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion . . . ." *W. Va. State Bd. of Educ. v. Barnette*, 319 U.S. 624, 642 (1943). Over six decades ago, *Barnette* made it clear that the First Amendment applies to public school students:

> The Fourteenth Amendment, as now applied to the States, protects the citizen against the State itself and all of its creatures—Boards of Education not excepted. These have, of course, important, delicate, and highly discretionary functions, but none that they may not perform within the limits of the Bill of Rights. That they are educating the young for citizenship is reason for scrupulous

---

[10] Appellants do not argue in their motion to dismiss or in their initial brief before this court (1) that they are entitled to qualified immunity with respect to their restriction of parent-to-parent speech on school grounds or (2) that Appellees have failed to plead (or have waived the argument) that Appellants engaged in unconstitutional viewpoint discrimination with respect to parent-to-parent speech. Accordingly, this court does not consider such arguments, which were raised for the first time in Appellants' reply brief on appeal. "An appellant abandons all issues not raised and argued in its *initial* brief on appeal." *Cinel v. Connick*, 15 F.3d 1338, 1345 (5th Cir. 1994) (citations omitted).

protection of Constitutional freedoms of the individual, if we are not to strangle the free mind at its source and teach youth to discount important principles of our government as mere platitudes.

*Barnette*, 319 U.S. at 637.

Appellants argue that reliance on *Barnette* is misplaced because "(1) there is nothing in the Supreme Court's decision in *Barnette*, nor in the lower court's decision, that indicates that the plaintiffs in *Barnette* were elementary school students nor that the decision generally applies the free speech clause in the elementary school context, (2) the Supreme Court was not presented with the question of whether it should differentiate between elementary school and high school students, and (3) *Barnette* involved compelled speech, not a restriction on the distribution of non-curricular materials." These arguments are meritless. With respect to the age of the Barnett[11] Sisters, although the Supreme Court opinion does not specifically use the term "elementary school," it is evident on the face of the decision itself that the plaintiffs were elementary school students. *Id*. at 630, 633, 644 (describing the plaintiffs as "children" and "little children").

Furthermore, the fact that the Supreme Court did not analyze whether it should differentiate between elementary and high school students is inconsequential and does nothing to subvert the clarity of the opinion. The issue here is whether elementary school students have any First Amendment rights, not whether their rights are coextensive with high school students. In addition, *Barnette* overruled *Minersville School District v. Gobitis*, 310 U.S. 586 (1940), which involved a ten-year-old child. *Id*. at 591; *see also Bowen v. Roy*, 476 U.S. 693, 705 (1986) (stating that *Barnette* involved "young children at elementary and secondary schools" (citation omitted) (Brennan, J., concurring)).

---

[11] We use the correct spelling of the Barnett surname, which does not match the case caption because courts misspelled the surname as "Barnette" during the litigation.

No. 09-40373

As to Appellants' third contention, the state school board's policy, which required every student to pledge allegiance to the United States flag regardless of religious beliefs, effectively prevented the Barnett Sisters from privately expressing their religious viewpoint—albeit through silence—at school. The Bill of Rights, "which guards the individual's right to speak his own mind, [does not leave] it open to public authorities to compel him to utter what is not in his mind." *Barnette*, 319 U.S. at 634; *see also Wallace v. Jaffree*, 472 U.S. 38, 51 (1985) (citing *Barnette*, 319 U.S. at 633-34, for the proposition that "freedom of thought protected by the First Amendment against state action includes both the right to speak freely and the right to refrain from speaking at all").

Twenty-six years after *Barnette*, the Supreme Court reiterated that the First Amendment Free Speech Clause applied to all students while in school:

> First Amendment rights, applied in light of the special characteristics of the school environment, are available to teachers and students. It can hardly be argued that either students or teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. This has been the unmistakable holding of this Court for almost 50 years. . . . Students in school . . . are 'persons' under our Constitution. . . . They may not be confined to the expression of those sentiments that are officially approved. In the absence of a specific showing of constitutionally valid reasons to regulate their speech, students are entitled to freedom of expression of their views.

*Tinker*, 393 U.S. at 506, 511. In *Tinker*, the "problem [involved] direct, primary First Amendment rights akin to 'pure speech'" and, similarly to the allegations in this case, did "not concern speech or action that intrudes upon the work of the schools or the rights of other students." *Id*. at 508. In that case, there was no evidence that the students' expressive conduct materially and substantially disrupted the work and discipline of the school. *Id*. at 508, 514.

Appellants "contend that the First Amendment, and therefore *Tinker*, does not apply to student-to-student distribution of non-curricular materials by

students in elementary schools" and cite *Tinker*, attempting to show that the "United States Supreme Court has never clearly addressed the question of whether any First Amendment free speech protections apply in public elementary schools." Once again, Appellants are mistaken. It does not follow that, because the majority opinion in *Tinker* did not use the precise term "elementary school," the Court's holding that "First Amendment rights . . . are available to teachers and students" somehow specifically excludes elementary school students. *Id.* at 506. On the contrary, the petition for certiorari in *Tinker*, "urg[ed] that the First and Fourteenth Amendments protect the right of school pupils to express their political views all the way 'from kindergarten through high school.'" *Id.* at 516 (Black, J., dissenting). Justice Black's dissent further illustrates that the Court's decision in *Tinker* applied to elementary school students: "[I]f the time has come when pupils of state-supported schools, kindergartens, grammar schools, or high schools, can defy and flout orders of school officials to keep their minds on their own schoolwork, it is the beginning of a new revolutionary era of permissiveness in this country fostered by the judiciary." *Id.* at 518 (Black, J., dissenting). In sum, given the factual allegations, which we must accept as true at this pleading stage, the school unconstitutionally discriminated against the speech of the elementary school students on the basis of religious viewpoint.

## B.

Appellants nevertheless contend that they are entitled to qualified immunity because the law does not clearly establish that the Constitution prohibits viewpoint discrimination against religious speech in elementary schools. Appellants are again mistaken.[12]

---

[12] Appellees contend that the clearly established inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." The Supreme Court, however, has held that "general statements of the law are not inherently incapable of giving

No. 09-40373

In addition to *Tinker* and *Barnette*, the Supreme Court, the Fifth Circuit, the United States government, and even Plano ISD notified Appellants that elementary school students have First Amendment rights. *See, e.g.*, *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 103 (2001) (applying the First Amendment Free Speech Clause to students "ages 6 to 12"); *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys. . . . Discrimination against speech because of its message is presumed to be unconstitutional." (citations omitted)); *Lamb's Chapel v. Ctr. Moriches Union Free Sch. Dist.*, 508 U.S. 384, 394 (1993) (holding, without distinguishing on the basis of age, that "the First Amendment forbids the government to regulate speech in ways that favor some viewpoints or ideas at the expense of others" (citation omitted)); *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 74 (1976) (citing *Tinker* for the holding that "[c]onstitutional rights do not mature and come into being magically only when one attains the state-defined age of majority" and that "[m]inors, as well as adults, are protected by the Constitution and possess constitutional rights" (citations omitted)); *Chiu v. Plano Indep. Sch. Dist.*, 339 F.3d 273, 280 (5th Cir. 2003) (holding in the middle school context, without distinguishing on the basis of age, that "[i]t is axiomatic that the government may not regulate speech

_____

fair and clear warning, and . . . a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (internal quotation marks and citations omitted).  The Supreme Court's general and broad prohibitions are sufficient to provide "fair warning" that the general rule prohibiting viewpoint discrimination applies to elementary school students.  Furthermore, when pressed to do so at oral argument, Appellants had great difficulty providing a single case in all of American history holding that religious-viewpoint discrimination against elementary school children is appropriate.  "The unconstitutionality of outrageous conduct obviously will be unconstitutional, this being the reason, as Judge Posner has said, that '[t]he easiest cases don't even arise.'" *Safford Unified Sch. Dist. No. 1 v. Redding*, ---- U.S. ----, 129 S. Ct. 2633, 2643 (2009) (citing *K.H. ex rel. Murphy v. Morgan*, 914 F.2d 846, 851 (7th Cir. 1990)).

15

based on its substantive content or the message it conveys" and that "government actors violate a clearly established right if they discriminate on the basis of the views espoused by the speaker" (internal quotation marks and citations omitted)); United States Department of Education, Guidance on Constitutionally Protected Prayer in Public Elementary and Secondary Schools (February 7, 2003), *available at* http://www2.ed.gov/policy/gen/guid/religionandschools/prayer_guidance.html (stating that the First Amendment "protects privately initiated religious expression and activities from government interference and discrimination"); Plano ISD, Student Expression: Distribution of Nonschool Literature, R. 3812-13 (showing that Plano ISD did not distinguish the legal right of a student to distribute non-school literature on the basis of age).[13]  In addition, this court has already observed in a related case that elementary school students are entitled to First Amendment rights.  *Morgan v. Plano Indep. Sch. Dist.*, 589 F.3d 740, 745 (5th Cir. 2009) (applying the *O'Brien* "time, place, and manner" test to Plano ISD's policy regulating student-to-student distribution of non-curricular materials in elementary schools—a test that would have been inappropriate had the court concluded that elementary school students are not protected by the First Amendment), *cert. denied*, 2010 WL 1004558 (2010).

Moreover, Appellants' reliance on *Pearson v. Callahan*, ---- U.S. ----, 129 S. Ct. 808 (2009), to urge us to look to courts in other circuits to support their

---

[13] Appellants' reliance on *Morse v. Frederick*, 551 U.S. 393 (2007), to suggest that the law is not clearly established is misplaced.  First, *Morse* was decided several years after the alleged conduct at issue, and therefore, Appellants could not have relied on it at the time of the alleged conduct to assess whether their actions were constitutionally permissible.  Second, assuming *arguendo* that Appellants could consider *Morse*, the appeal in that case arose out of a summary-judgment motion, not a 12(b)(6) motion as in the instant case.  *Morse* did not unsettle *Tinker*'s application to elementary schools.  Rather, *Morse* analyzed a specific type of conduct—promotion of illegal drug use—that can be restricted under *Tinker* given the "special characteristics of the school environment."  *Morse*, 551 U.S. at 397.

No. 09-40373

novel proposition—that there is no clearly established right of elementary school students to distribute non-curricular materials to their classmates—is both misplaced and unhelpful. *Pearson* does not stand for the proposition that courts are always required to consider decisions in other circuits when evaluating whether a right is clearly established. Rather, *Pearson* gives state officials the liberty to rely on clearly established law in other circuits in situations where the Supreme Court and their own circuit have not yet acted. *Id.* at 822-23. Conversely, even prior to *Pearson*, we have observed that other precedent may be used in some circumstances to demonstrate the presence of a clearly established right in situations where the Supreme Court and this circuit have not yet addressed the issue. *McClendon v. City of Columbia*, 305 F.3d 314, 329 (5th Cir. 2002) (en banc) ("[I]n the absence of directly controlling authority, a consensus of cases of persuasive authority might, under some circumstances, be sufficient to compel the conclusion that no reasonable officer could have believed that his or her actions were lawful." (internal quotation marks and citations omitted)).

Even assuming *arguendo* that it were necessary to consider the law of other circuits, Appellants would not be entitled to qualified immunity. *See, e.g.*, *Peck v. Baldwinsville Central Sch. Dist.*, 426 F.3d 617, 625-29, 633 (2d Cir. 2005) (applying the *Hazelwood* framework in the kindergarten setting to conclude that certain speech was "school-sponsored" but nevertheless holding that "a manifestly viewpoint discriminatory restriction on school-sponsored speech is, prima facie, unconstitutional, *even if* reasonably related to legitimate pedagogical interests"); *Walker-Serrano v. Leonard*, 325 F.3d 412, 417 (3d Cir. 2003) (concluding that although age is a factor, "this calculus does not [necessarily] mean that third graders do not have First Amendment rights under *Tinker*"); *Walz v. Egg Harbor Twp. Bd. of Educ.*, 342 F.3d 271, 280 (3d

17

Cir. 2003) ("[E]lementary school students retain certain First Amendment rights of expression." (citation omitted)); *Brown v. Gilmore*, 258 F.3d 265, 278 (4th Cir. 2001) ("Despite language in Supreme Court precedent recognizing the impressionability of elementary school children . . . nothing the Court has said 'suggest[s] that, when the school was not actually advancing religion, the impressionability of students would be relevant to the Establishment Clause issue.'" (quoting *Good News Club v. Milford Cent. Sch.*, 533 U.S. 98, 116 (2001)); *Curry v. Hensiner*, 513 F.3d 570 (6th Cir. 2008) (applying *Hazelwood*'s First Amendment framework in the elementary school setting); *Hosty v. Carter*, 412 F.3d 731, 735 (7th Cir. 2005) ("The Supreme Court itself has established that age does not control the public-forum question. . . . No public school, of any level—primary, secondary, or post-secondary—may discriminate against religious speech in a public forum (including classrooms made available to extracurricular activities) . . . . *Hazelwood*'s framework applies to . . . elementary and secondary schools." (citations omitted)); *Muller v. Jefferson Lighthouse Sch.*, 98 F.3d 1530, 1538 (7th Cir. 1996) (recognizing that "religious speech cannot be suppressed solely because it is religious . . . , a principle that makes sense in the elementary school environment"); *Hedges v. Wauconda Cmty. Unit Sch. Dist. No. 118*, 9 F.3d 1295, 1298 (7th Cir. 1993) ("[N]othing in the [F]irst [A]mendment postpones the right of religious speech until high school."); *Frazier v. Winn*, 535 F.3d 1279, 1281-83 (11th Cir. 2008) (finding that all Florida public school students "at all grade levels from kindergarten to twelfth grade" have the First Amendment right to not stand during the pledge of allegiance).[14]

---

[14] Appellants contend that the law is not clearly established and argue that the Third and the Sixth Circuits have upheld viewpoint discrimination against religious speech in elementary schools. *See Walz v. Egg Harbor Twp. Bd. of Educ.*, 342 F.3d 271, 278-79 (3d Cir. 2003) (holding that the school could prohibit gifts with "commercial, political, religious, or other undertones that promoted a specific message" in an organized curricular activity); *Curry*

No. 09-40373

In light of the overwhelming precedent and persuasive authority to the contrary, it is unsurprising that Appellants can point to no case stating that elementary school students are without protection under the First Amendment from religious-viewpoint discrimination, absent evidence of disruption to the classroom or subversion of educational mission.  Appellants thus had fair warning that the suppression of student-to-student distribution of literature on the basis of religious viewpoint is unlawful under the First Amendment with respect to elementary school students.  Therefore, Appellants are not entitled to qualified immunity.  "If the law was clearly established, the immunity defense ordinarily should fail, since a reasonably competent public official should know the law governing his conduct." *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19 (1982).  Furthermore, this case does not present extraordinary circumstances, and Appellants have set forth no argument that they "neither knew nor should have known of the relevant legal standard." *Id.* at 819. Appellants' conduct, as alleged, violated the elementary school students' clearly established First Amendment rights.

We reach our holding in light of the facts as alleged in the complaint, which we must accept as true at this pleading stage, and Appellants' acknowledgment that the speech, as alleged, is non-disruptive student-to-

---

*v. Hensiner*, 513 F.3d 570 (6th Cir. 2008) (holding that the school could prohibit religious messages on goods sold during a simulated marketplace that was part of the formal curriculum).  Initially, we note that the speech restriction in *Walz* was not limited to a religious viewpoint.  More importantly, these cases fail to support Appellants' novel proposition that school officials may discriminate against religious viewpoints because of the age of the speaker.  Rather, both cases apply the principle that a school may restrict student speech when it occurs during "school-sponsored" activities that "the public might reasonably perceive to bear the imprimatur of the school" and the restriction is "reasonably related to legitimate pedagogical concerns." *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 271, 273 (1988).  Here, the alleged events fall outside the *Hazelwood* context because Appellees' complaint, which we must accept as true, indicates that Appellants restricted the students' speech solely because of its religious character, not for a pedagogical reason or because of a concern that the public might misperceive the speech as bearing the imprimatur of the school.

19

No. 09-40373

student speech.  Moreover, Appellants have consistently argued both before the district court and this court that qualified immunity should be granted because elementary school students do not have any First Amendment rights.  No law supports Appellants' novel proposition.  It is clearly established that elementary school students have First Amendment rights.  Our holding, however, does not preclude the district court from granting qualified immunity in this case should the facts demonstrate that this is other than non-disruptive student-to-student speech.  In addition, nothing prohibits Appellants from raising other grounds for qualified immunity in the future.[15]

## V.

Appellees' have alleged a violation of clearly established law; therefore, Appellants are not entitled to qualified immunity.  The district court's denial of Appellants' Motion to Dismiss is AFFIRMED.

---

[15] Appellants contend that, even if the law is clearly established that the First Amendment prohibits religious viewpoint discrimination at the elementary school level, qualified immunity nevertheless applies because of current confusion with respect to Establishment Clause jurisprudence.  This argument borders on the frivolous and is a red herring.  Appellees' complaint provides no indication, whatsoever, that the student speech was anything other than non-disruptive, non-curricular student-to-student speech, and no facts pleaded suggest that the speech bears the imprimatur of the public schools or that any students were confused as to the source of the speech.  "[T]here is a crucial difference between *government* speech endorsing religion, which the Establishment Clause forbids, and *private* speech endorsing religion, which the Free Speech and Free Exercise Clauses protect." *Bd. of Educ. of Westside Cmty. Sch. v. Mergens*, 496 U.S. 226, 250 (1990).